Argued and submitted May 29, peremptory writ to issue August 29, 1996

## STATE ex rel SPORTS MANAGEMENT NEWS, INC.,
*Plaintiff-Relator,*

*v.*

## Gayle A. NACHTIGAL,
Circuit Court Judge,
Washington County,
*Defendant,*

*and*

## THE OREGONIAN PUBLISHING COMPANY
and adidas America, Inc.,
*Intervenors.*

(SC S43103)*

921 P2d 1304

---

\* Relating to Washington County Circuit Court No. C960245CV.

Lee Levine, of Ross, Dixon & Masback, L.L.P., Washington, D.C., argued the cause for plaintiff-relator. With him on the briefs were Daniel J. Standish, Washington, D.C., and Robert E.L. Bonaparte, of Bonaparte, Elliott & Ostrander, P.C., Portland.

Steven K. Blackhurst, of Ater Wynne Hewitt Dodson & Skerritt, Portland, argued the cause for defendant and intervenor adidas America, Inc. With him on the brief were Lori Irish Bauman and Susheela Jayapal.

Charles F. Hinkle, Portland, argued the cause and filed the briefs for intervenor Oregonian Publishing Company.

Julianne Ross Davis, of Chernoff, Wilhauer, McClung & Stenzel, Portland, filed a brief on behalf of *amici curiae*

Newsletter Publishers Association; Dow Jones & Company, Inc.; The McGraw-Hill Companies, Inc.; National Association of Broadcasters; The Reporters Committee for Freedom of the Press; Oregon Television, Inc.; Magazine Publishers of America, Inc.; Oregon Newspaper Publishers Association; Oregon Association of Broadcasters; and Station KOIN.

Before Carson, Chief Justice, Gillette, Van Hoomissen, Fadeley, and Durham, Justices, and Riggs, Justice pro tempore.**

FADELEY, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision; Graber, J., did not participate in the consideration or decision of this case.

## FADELEY, J.

This mandamus action challenges a circuit court order that requires a newsletter publisher to obtain approval from the circuit court before it publishes an "alleged trade secret." A statute, set forth below, expressly authorizes an order imposing that sort of prior restraint on publication, even when there is no allegation that the third-party publisher[1] has violated the criminal or civil law to possess the information. For the reasons expressed below, we issue a peremptory writ of mandamus directing the circuit court to reverse that order.

On March 5, 1996, adidas America, Inc. ("adidas"),[2] brought an action in Washington County Circuit Court under the Oregon Uniform Trade Secrets Act, ORS 646.461 to 646.475 (the Act). The complaint alleged that Sports Management News, Inc. ("SMNI"), which publishes a weekly trade newsletter entitled Sporting Goods Intelligence ("SGI"), had misappropriated alleged trade secrets belonging to adidas. The action sought a restraint in the form of a prohibition against publication. "Misappropriation" is a term defined in the Act. ORS 646.461(2). Under the Act, a misappropriation provides a ground for adidas' action.

The complaint pointed to SGI's publication on February 19, 1996, of a one-paragraph report that stated:

> "ADIDAS *Barefoot Technology* plans to introduce a visible chassis for Spring '97 along with a full chassis running shoe. Also on the drawing board is a reduction of foam to foam-less midsole and a three-dimensional frame to attach to the PODS outriggers."

Based on the terminology used in that report, adidas' complaint alleged that SMNI has acquired a copy of a "highly confidential booklet * * * intended only for internal use

---

[1] We use the term "third-party publisher" in this context to refer to a person or entity other than one who holds the trade secret and one to whom the trade secret is disclosed in a confidential relationship where secrecy prevails.

[2] "adidas America, Inc.," in its filings with the court has indicated that it spells the corporate name "adidas" with a lower case "a." Its registration to do business in Oregon is in that style. We honor that convention except where the word starts a sentence.

[within adidas] that includes trade secrets related to the development of footwear that meets natural, biomechanical needs." The complaint further asserted that the booklet itself "conspicuously notes" its confidentiality, was distributed only to selected individuals within the company, and that adidas employees are "subject to confidentiality agreements that prohibit disclosure of [the booklet and other] confidential and proprietary materials." The complaint alleged, upon information and belief, that SMNI's actions constituted "misappropriation" of adidas' "trade secrets" as those terms are defined in ORS 646.461.

At ensuing evidentiary proceedings that were conducted pursuant to various motions of the parties, adidas showed: that the booklet is considered a trade secret, the confidential nature of the booklet, the limited internal distribution of the booklet to select employees who are covered by confidentiality agreements with the company, the failure of its internal investigations to locate the source of any disclosure of the booklet or its contents, and that it appeared that SMNI's published report derived from SMNI's possession of the booklet. Adidas adduced no additional facts to establish any of the statutorily defined aspects of SMNI's alleged "misappropriation." SMNI did not disclose whether it possessed the booklet or, if it had it, how it got it.

On the day that adidas filed its complaint in circuit court, adidas also obtained, *ex parte,* an initial order that sealed its complaint and other court records in this case and that prohibited SMNI from further disclosure of adidas' alleged trade secrets "without prior court approval." It is not necessary to describe here other procedural developments in this case. What matters for purposes of this decision is that the circuit court issued a later order, dated March 25, 1996, which is the order that is now before us on review. That order vacated a portion of the initial circuit court order that had sealed all court records and further provided:

"4.  Plaintiff has made a prima facie showing that its Proprietary Booklet regarding development of footwear technology for the spring of 1997 and thereafter is a trade secret as defined in ORS 646.461. *Pursuant to ORS 646.461 to*

*646.475 [the Act], defendant Sports Management News, Inc. may not disclose or use, without prior court approval, any information derived from* the adidas Proprietary Booklet regarding development of footwear technology for the spring of 1997 and thereafter. This limitation is applicable only to information which defendant Sports Management News, Inc. derives from the adidas Proprietary Booklet and is not applicable to information obtained in any other manner.

"\* \* \* \* \*

"6. *Before disclosing or using any information derived from the Proprietary Booklet, Sports Management News, Inc. shall submit the pertinent information to the Court* for determination of whether the information discloses trade secrets of adidas. Any information from the Proprietary Booklet submitted to the court for purposes of such a determination shall be submitted under seal, as provided by ORS 646.649. *If the Court determines that the information does not disclose trade secrets, Sports Management News, Inc. shall be permitted by the Court to publish the information.*" (Emphasis added.)

■       Before we consider the constitutional question raised in this case, we consider whether there is a source of authority for the circuit court's order. *See Zockert v. Fanning,* 310 Or 514, 520, 800 P2d 773 (1990) (court considers subconstitutional grounds for decision first). Adidas obtained the challenged circuit court order that restrained publication by SMNI pursuant to express authority in the Act, specifically ORS 646.469, which provides:

"In any action brought under ORS 646.461 to 646.475 [the Act], the court shall preserve the secrecy of an *alleged trade secret* by reasonable means, *which may include* granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action or *ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.*"[3] (Emphasis added.)

---

[3] Intervenor The Oregonian Publishing Company argues that, if the court entered its order under authority of ORS 646.463(1), the requirements to obtain an injunction apply but that the circuit court did not require them to be satisfied. ORS 646.463(1) provides: "Actual or threatened misappropriation may be temporarily,

The statutory terminology reflects a legislative choice to authorize court orders to protect the secrecy of an alleged trade secret from the point of inception of a case (as occurred initially in this case, when an *ex parte* order prohibiting disclosure issued on the day that the complaint was filed), and to do so based only on an allegation that there is a "trade secret" to be protected.[4]

ORS 646.461(4) defines a "trade secret" as follows:

" 'Trade secret' means information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

"(a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

"(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The circuit court did not examine the proprietary booklet containing adidas' alleged trade secrets, but it did have before it the uncontroverted affidavit of the international patent manager for adidas stating facts which the court ruled were sufficient to establish a *prima facie* case that the booklet in question met the statutory requirements for a trade secret.

SMNI and intervenor The Oregonian Publishing Company challenge the constitutionality of the circuit court

___

preliminarily or permanently enjoined." There are no indications in the court's order or elsewhere that the circuit court relied on that more general statutory source of authority to enjoin. The primary focus of ORS 646.463 is to define the injunctive relief that is *ultimately* available to remedy a violation of the Act, a stage that this case, not yet near its end, has not reached. We do not reach that aspect of intervenor's argument, because the challenged order does not draw its authority from ORS 646.463.

We hasten to add that we do not mean to imply that the ultimate result in the case would be any different if we were to consider not only ORS 646.469, but also ORS 646.463, as sources of statutory authority for the court's restraint on publication.

[4] No express finding of fact that there was a trade secret was entered. At least part of the showing, if not all, was by affidavit of an adidas manager.

Although the statute requires only an *alleged* trade secret, the circuit court order goes beyond that bare statutory minimum, reciting that adidas has made out a *prima facie* showing of the existence of a trade secret.

order and, thus, the statutory authority under which it was entered, by invoking the free speech provisions of the state and federal constitutions.[5] We conclude that the statute violates Article I, section 8, of the Oregon Constitution, as explained below, and direct that the circuit court reverse the order.[6]

Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Interpretation of that provision most frequently begins with *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982); and *State v. Spencer*, 289 Or 225, 611 P2d 1147 (1980), and more recently was restated by this court in *State v. Stoneman*, 323 Or 536, 543-45, 920 P2d 535 (1996); and *Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993). We plow no new ground in analyzing this case.

The nondisclosure provision of ORS 646.469 expressly restricts the right to speak, write, or print freely on any subject whatever, *i.e.*, it restricts speaking on the "subject" of an alleged trade secret. Consequently, the nondisclosure provision of ORS 646.469 "must be examined under one or the other" of two categories—"those [statutes] that focus on the content of speech and those that focus on the effect of speech." *Stoneman*, 323 Or at 544; *see also Moser*, 315 Or at 375 n 1 (stating those two categories for analysis).[7]

---

[5] It bears mention that the parties' focus on the constitutionality of the *order* is slightly misplaced. Because the source of the order is statutory, the first issue is whether that statutory provision is constitutional. If not, the order that issued based solely upon that statutory authority is not valid.

[6] Our disposition of this case makes it unnecessary for us to consider an additional challenge based on the "open courts" provision of the Oregon Constitution, Article I, section 10.

Because state law provides complete relief to relator, we do not reach the question whether the First Amendment, as it would apply to the state, would require the same result. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (stating principle).

[7] "Effect" in this context includes the concept of a "harm." *See Stoneman*, 323 Or at 543 (defining the second category as composed of those statutes where the

■     In this case, ORS 646.469 authorizes what is instantly recognizable as a classic "prior restraint" on publication. Neither this court nor the text of Article I, section 8, accords any special dispensation to a "prior restraint." Our framework for deciding cases under Article I, section 8, does not suggest or require that this court treat prior restraints differently than any other laws that restrict expression. Thus, it is sufficient for analytic purposes to recognize simply that ORS 646.469 authorizes a restriction on the right to print freely on any subject.

■     In our view, the nondisclosure provision of ORS 646.469 directing the court to preserve the secrecy of alleged trade secrets by reasonable means, which may include "ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval," is a statutory provision that is *written* in terms that focus on the *content* of speech. The speech that ORS 646.469 restricts is, of course, constitutionally protected expression. The Oregon Constitution clearly and categorically recognizes the newsletter's right to print freely on any subject whatever and does not permit a statute to restrict that right, as the challenged statute does in this instance, by authorizing a judge to require a third-party publisher, one who did not commit a crime in obtaining its information, to submit its speech for court approval before publication. *See, e.g.*, ORS 646.461(2)(d)(C) (defining an actionable misappropriation, subject to restraint under ORS 646.469, to include unconsented disclosure of a trade secret by a person who "knew or had reason to know that the knowledge of the trade secret was * * * [d]erived from or through a person who owed a duty * * * to maintain its secrecy or limit its use"). The law is, by its terms, directed at a "specific subject of communication, excluding some speech based on the content of the message" and it, therefore, "limits the substance of a subject of communication." *Moser*, 315 Or at 376.

In *Moser*, this court held that a law that prohibited the use of any "automatic dialing and announcing device to

---

"*actual focus* of the enactment is on an *effect* or *harm* that may be proscribed, rather than on the substance of the communication itself" (emphasis in original)).

solicit the purchase of any realty, goods or services" violated Article I, section 8. In so holding, the court concluded that the law was written in terms that focused on the content of speech rather than being focused on the harmful effects of speech. *Id*. at 375-80. The statute in *Moser*, like the statutory provision at issue in this case, prohibited speech of a particular type and was thereby deemed to focus on the content of speech.

■■     A statute that is written in terms that focus on the content of speech is invalid on its face, unless it fits "wholly" within some historical exception. *Stoneman*, 323 Or at 543, 545; *Moser*, 315 Or at 376. In this case, adidas has not demonstrated, nor have we otherwise found, the existence of a historical exception for the prior-restraint protection of trade secrets from publication by a third-party publisher who receives information lawfully.[8] Absent a historical exception, that publication is protected speech that may not be restricted under the Oregon Constitution. Consequently, adidas has not demonstrated that the nondisclosure provision of the challenged statute, ORS 646.469, fits wholly within a historical exception to Article I, section 8. *See also Stoneman*, 323 Or at 543 n 8 (discussing cases in which "an enactment may fit only *partly* within a historical exception" (emphasis in original)).

The analysis set out in *Stoneman*, where the issue was criminal punishment to inhibit other criminal acts inherent in the punished act and thereby to prevent their harmful effects, nonetheless directs us also to consider whether the statute *actually* was focused instead on *harmful effects* of speech. 323 Or at 543, 545-46. That, however, does

---

[8] *Perhaps* there *may* be circumstances where a restriction on publication under the Act to protect property rights would be constitutional. The parties have discussed, for example, whether the constitution historically would permit a prior restraint on speech under the Act if issued against an adidas employee, bound to confidentiality, who sought to disclose the alleged trade secrets, or against a publisher who had broken the criminal law to obtain the trade secrets. For further discussion, *see generally Stoneman*, 323 Or at 549 n 20 (citing *American Booksellers Ass'n, Inc. v. Hudnut*, 771 F2d 323, 332 (7th Cir 1985), *aff'd* 475 US 1001 (1986)). But neither the statute at issue, nor the order issued based on it, requires any such limiting factual conditions.

not appear to be the case with the prior restraint statute here.

ORS 646.469 protects the secrecy of an alleged trade secret in an action brought under the Act; that is, to protect the property interests of the holder of the trade secret by prohibiting speech "without prior court approval." ORS 646.469 performs no other office; it makes no conduct unlawful under the Act. Nor does it provide a remedy for misappropriation under the Act. The remedies are damages, provided under ORS 646.465, and injunction, provided under ORS 646.463(1).

■ One could contend that a remedial provision that identifies the harm against which it offers protection, namely, loss of secrecy of an alleged trade secret, focuses on the harmful effect of speech. Nonetheless, the direct, express, and subject-matter specific focus of the nondisclosure provision in ORS 646.469 leads to a conclusion that the words of the statute that support the court order's focus on the content of speech, not on harmful effects.[9] *See Moser*, 315 Or at 379. In short, ORS 646.469 authorizes a court to compel silence from one who desires to speak. And that statute authorizes the judicial prohibition based on the subject or content of the desired speech. The nondisclosure provision of the statute is invalid as violative of Article I, section 8, of the Oregon Constitution.

---

[9] As this court has said in discussing an overbreadth analysis of a statute focused on effects, "It is, * * * in the first instance a legislative responsibility to narrow and clarify the coverage of a statute so as to eliminate most apparent applications to free speech or writing, leaving only marginal and unforeseeable instances of unconstitutional applications to judicial exclusion." *State v. Robertson*, 293 Or 402, 437, 649 P2d 569 (1982), *cited in Stoneman*, 323 Or at 550; *see Moser*, 315 Or at 379 (stating how the legislature may carry out the rule). Where appropriate, the court may "narrowly" interpret a statute that, if interpreted broadly, reaches free speech. *See State v. Moyle*, 299 Or 691, 703-06, 705 P2d 740 (1985) (so stating).

The nondisclosure provision of ORS 646.469 at issue here is quite clear. It is not susceptible to being understood in a manner that would exclude its authority to order prior restraints from applying to actions against third-party publishers. *Compare* ORS 646.469 (applying its provisions to any action brought under the Act) *with* ORS 646.461(2)(d)(C) (defining an actionable misappropriation to include unconsented disclosure of a trade secret by a person who "knew or had reason to know that the knowledge of the trade secret was * * * [d]erived from or through a person who owed a duty * * * to maintain its secrecy or limit its use").

■       That brings us to the disposition of this case. Paragraphs 4 and 6 of the circuit court's order, issued pursuant to the statutory authority that is constitutionally invalid, must be reversed.[10] A peremptory writ to that effect shall issue.

        Peremptory writ to issue.

---

[10] The constitutional invalidity of the prior-restraint nondisclosure provision of ORS 646.469 does not render the rest of ORS 646.469 invalid. ORS 646.475(3) provides that the various provisions of ORS 646.461 to 646.475 are severable. The nondisclosure provision of ORS 646.469 is a discrete provision, with no necessary correlation or interrelationship to other means given to the court to protect the secrecy of a trade secret or to the damages provisions of the Act. Those other provisions each can be given independent effect in appropriate circumstances. Under those circumstances, the constitutionally invalid nondisclosure provision may be severed from the remainder of the Act.