Argued and submitted November 21, 1996, affirmed March 5, petition for
review allowed August 12, 1997 (326 Or 43)
See later issue Oregon Reports

Joy DELGADO,
*Respondent,*

*and*

STATE OF OREGON,
*Intervenor,*

*v.*

Robert Hunter SOUDERS,
*Appellant.*

(95-10330; CA A92188)

934 P2d 1132

Chris W. Dunfield argued the cause and filed the briefs for appellant.

Richard L. Wehmeyer argued the cause and filed the brief for respondent.

Robert M. Atkinson, Assistant Attorney General, argued the cause for intervenor. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Robert Souders appeals from the judgment in this civil action under ORS 30.866, in which petitioner Joy Delgado sought and the court issued a stalking protective order against Souders. We affirm.

Delgado and Souders lived approximately one block away from one another in the City of Corvallis. The conduct of which Delgado complained ranged from Souders' repeated appearances in front of the building where Delgado resided and on public sidewalks where Delgado was also walking, to encounters of a notably closer kind. Among the latter were episodes in which Souders crossed a street at a sharp angle and passed within two or three feet of Delgado while she was getting out of her automobile; and various encounters on the Oregon State University campus, a number of which occurred in secluded areas of the campus, including one in which Souders suddenly appeared on a pathway at night approximately one foot away from Delgado. Delgado testified that Souders would appear next to her suddenly and quietly; she characterized his behavior as "sneaking up behind me without any sound and so swiftly." There were also a number of instances in which Souders placed himself in proximity to Delgado's study carrel in the university library, in a manner requiring her to pass him in order to reach her destination; and at least one episode in which Souders showed up on different floors of the library as Delgado moved from one to the other because of her anxiety over his presence. There was evidence that a similar pattern of encounters between Souders and another woman had occurred, including following her from floor to floor at the library. There was no evidence that Delgado and Souders ever exchanged words.[1] As a result of the events, Delgado suffered severe anxiety and related emotional and physical trauma. She changed her place of residence and telephone and underwent professional psychological treatment.

---

[1] There was evidence that Delgado received a series of telephone calls in which the caller did not respond after she answered. However, there was no evidence to link Souders to the calls. There was also evidence that Souders once appeared to be on the verge of saying something to Delgado but did not do so.

ORS 30.866(1) provides:

"A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

ORS 163.730, the definitional provision for the stalking statutes, provides, as relevant:

"As used in ORS 30.866 and 163.730 to 163.750, unless the context requires otherwise:

"(1) 'Alarm' means to cause apprehension or fear resulting from the perception of danger.

"(2) 'Coerce' means to restrain, compel or dominate by force or threat.

"(3) 'Contact' includes but is not limited to:

"(a) Coming into the visual or physical presence of the other person;

"(b) Following the other person;

"(c) Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d) Sending or making written communications in any form to the other person;

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person;

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j) Damaging the other person's home, property, place of work or school; or

"(k) Delivering directly or through a third person any object to the home, property, place of work or school of the other person.

"* * * * *

"(7) 'Repeated' means two or more times.

"(8) 'School' means a public or private institution of learning or a child care facility."

■ Souders makes two assignments of error. He contends in one that his "conduct was so trivial that it does not entitle [Delgado] to a court's stalking protective order." The trial court found that the encounters were, at least in part, not "accidental" and constituted "knowingly unwanted contacts." The court concluded further that it was objectively reasonable for Delgado to be apprehensive about her personal safety. Souders acknowledges that we are bound by the trial court's findings, if there was evidence to support them. He argues, nevertheless, that the nature of the contacts could not be "such as to cause a reasonable apprehension of a danger to one's personal safety." To the extent that Souders' argument posits that his conduct was nonculpable or innocuous and was of a kind that Delgado should have been prepared to accept as merely having to share public sidewalks with people "that one does not particularly like," the trial court's findings are to the contrary and clearly are supported by the evidence.

However, as we understand his argument, Souders also maintains that the encounters were not sufficiently aggravated to warrant a reasonable apprehension concerning personal safety on Delgado's part. In that connection, Souders contends that the stalking law is aimed at menacing situations involving "ex-husbands" and "jilted boyfriends," rather than at the ostensibly different kind of circumstance

involved here, where no *overtly* threatening acts or communications occurred.

■ Although Souders does not characterize his argument as such, its implicit thesis is that the legislation *should not* reach conduct of the kind in which he understands himself to have engaged. However, subject to constitutional limitations, *see State v. Rangel*, 146 Or App 571, 934 P2d 1128 (1997), it is the function of this and other courts to discern what the legislature *has* said. There is simply no question that the statute contemplates that alarm and the other evils at which it is directed *can* result from exactly the kinds of contacts that occurred here. ORS 163.730(3) defines "contact" to include, *inter alia*, following another person, coming into another person's physical or visual presence and waiting outside certain places that the other person frequents. We reject Souders' assignment.

■ In his other assignment, Souders contends that the stalking statute is unconstitutional on several grounds. However, some of his constitutional arguments turn on one or both of two underlying contentions or assumptions. First, he asserts that, although denominated a "civil" proceeding, an action under ORS 30.866 is "criminal in nature" under the rationale of *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977). We held otherwise in *Johnson v. McGrew*, 137 Or App 55, 902 P2d 1209, *rev den* 322 Or 361 (1995). Souders suggests that *Johnson* was wrongly decided. We disagree.

Secondly, Souders argues that the speech provisions of the state and federal constitutions, Article I, section 8, and the First Amendment, preclude a finding that he violated the stalking statute. He contends that the statute cannot be invoked against him "without [evidence of a] genuine and imminent threat of violence which is necessary to remove the accused's actions from constitutional [speech] protection." We held in *Rangel* that ORS 163.732, the criminal analog of ORS 30.866, could survive under the constitutional speech provisions only if construed in such a manner that the actor's expression giving rise to the victim's apprehension for safety must be accompanied by the intent and ability to commit the threatened harm. That conclusion may be equally applicable

to the civil stalking statute, but it is unnecessary to decide that question here.

■ Unlike *Rangel*, no speech or other constitutionally protected expression is involved in this case, nor does the statute make expression the only kind of conduct that can constitute stalking. ORS 163.730(1)(c) defines eleven different methods of "contact" that can constitute the threshold element of stalking. Of those, five necessarily involve communication, three can be committed with or without communication, and three—the contacts enumerated in ORS 163.730(3)(a)-(c)—would normally entail only physical noncommunicative conduct, as they did here. Those last three forms of contact are the only ones in which Souders arguably engaged. The statute is severable, *State ex rel Sports Management News v. Nachtigal*, 324 Or 80, 91 n 10, 921 P2d 1304 (1996), and the constitutional speech provisions have no application to Souders' conduct or to the provisions of the statute that he violated through that conduct.

■■ Souders also makes a number of constitutional contentions that are not completely dependent on the premises that the relevant parts of the statute implicate speech or are criminal in character. He argues first that the terms "contact," "alarm" and "personal safety" render the statute void for vagueness.[2] Souders maintains that "contact" is vague, because ORS 163.730(3) uses the words "include but is not limited to" before enumerating specific types of contacts. We do not agree that that common definitional preface makes the statute vague, or that a factfinder or Souders himself—whose conduct fits squarely within three of the specified "contact" methods—could have been in any way confused as to whether his conduct was proscribed. *See State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985).

Souders asserts that, although the statute defines "alarm," that term is vague because "danger" is included in its definition, and the unadorned term "danger" is vague

---

[2] For purposes of discussion, we assume only for discussion that the vagueness issue is cognizable under both constitutions under the facts of the case. *But see Megdal v. Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980). In addition to the three terms noted, Souders asserts that two others—"follow" and "coerce"—are vague, but he makes *no* argument to explain why.

because it does not specify whether it refers only to physical danger or includes other types of hazards as well.[3] Souders finds the same vice in the term "personal safety." However, as with the term "torture" in the aggravated murder statute that the court upheld against a vagueness challenge in *State v. Cornell/Pinnell*, 304 Or 27, 32 n 2, 741 P2d 501 (1987), there is no basis for construing "personal safety" as encompassing apprehension of harms other than physical ones, in the absence of any suggestion of a contrary legislative intent. On its face, the phrase connotes physical safety; indeed, the phrase can barely, if at all, be understood to refer to anything else.

■■ Souders views the putative vagueness problems as cumulative and states that "the vagueness of each term compounds the vagueness of the others." In our view, the opposite is true: The very fact that the words are connected in the statute means that, to whatever extent Souders' argument about any one of the terms might otherwise have merit, it collapses once the meaning of any of the other terms is discerned and that meaning adds to the substance of the related terms. Because "personal safety" refers to "physical safety," the terms "alarm" and "danger" become precise enough to withstand scrutiny for vagueness, even assuming that they might otherwise be impermissibly vague. All of the terms ultimately contemplate a reasonable apprehension of physical harm. *See also Rangel* (showing of threat of *violence* required under criminal stalking statute).[4]

Souders also relies on *State v. Norris/Romine-Finley*, 134 Or App 204, 894 P2d 1221, *rev den* 321 Or 512 (1995), where we held that the term "legitimate purpose" was unconstitutionally vague in a predecessor version of the stalking statute, which insulated actions taken with such a purpose from the statute's application. That language was deleted from the present version of the statute. Souders argues, however:

---

[3] The Supreme Court in *Moyle* rejected a vagueness challenge concerning the word "alarm."

[4] It is important to emphasize that, although the direct objective of the statute is to prevent the inducement of a psychological or emotional state of alarm, the object of the alarm nevertheless is physical harm to the victim or persons close to the victim.

"Eliminating the 'legitimate purpose' language only begs the question: What *is* legitimate activity which is *not* stalking? The new statutes have no objective standard for determining what is and is not prohibited. The 'stalking' statutes remain an unconstitutional delegation of legislative power to the trier of fact.

"* * * * *

"[T]here is still no means of separating 'legitimate' conduct from conduct which constitutes 'stalking.' " (Emphasis Souders'.)

■ Souders' argument presupposes that the statute must contain an *express exception* for "legitimate" acts, as distinct from describing the act of "stalking" solely in an *inclusive* way. *Norris / Romine* does not so hold but, rather, holds that the "legitimate purpose" exception that the legislature *elected* to include in the earlier statute was vague. That, of course, is not the same thing as indicating that the present statute is vague because it does not define or provide an overt exception for legitimate purposes. We reject Souders' vagueness contentions.

■ Souders also argues that the statute "violate[s] constitutional rights to travel freely from place to place without unreasonable interference." He makes a number of points in this connection, only one of which we address. Souders asserts that the statute allowed the court to issue a protective order that interferes with his "right to freedom of movement and to enjoy public places," *e.g.*, the vicinity of Delgado's residence. Although Souders cites several state and federal constitutional provisions in support of his contention, we find nothing in them to substantiate the general proposition that there is a constitutional impediment against enjoining a person from frequenting a public place, where the circumstances are appropriate. Insofar as the real target of this argument is the scope of the protective order rather than the constitutionality of the statute, it is unpreserved. Souders' assignment of error here and the ruling of the trial court of which he complains both pertain to his motion to dismiss the complaint on grounds that relate only to the constitutionality of the statute.

We have considered Souders' remaining arguments and conclude that they require no discussion.

Affirmed.