Argued and submitted October 31, reversed and remanded for trial March 5, petition for review allowed May 20, 1997 (325 Or 367)
See later issue Oregon Reports

# STATE OF OREGON,
*Appellant,*

*v.*

# EDUARDO TINOCO RANGEL,
*Respondent.*

(950127CM; CA A91166)

934 P2d 1128

Robert M. Atkinson, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Andy Simrin, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Defendant was charged with stalking, ORS 163.732, by "unlawfully and knowingly alarm[ing] [the victim] by coming to her place of employment and threatening her" on repeated occasions. Defendant demurred to the accusatory instrument, and the trial court granted the demurrer on the ground that the stalking statute is overbroad in the speech that it proscribes and, therefore, violates Article I, section 8, of the Oregon constitution. The state appeals, and we reverse.

ORS 163.732(1) provides:

"(1)   A person commits the crime of stalking if:

"(a)   The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Defendant contends that, when the allegedly violative conduct entails speech or other communication,[1] the statute is overbroad, and therefore violates Article I, section 8, and the First Amendment, in that it facially restricts speech that cannot permissibly be restricted in order to prevent its forbidden effects of inducing alarm or coercion, or in that it facially regulates speech other than or in addition to speech that produces those effects. The state responds that ORS 163.732 is similar in its particulars to the harassment statute that was challenged on overbreadth grounds in *State*

---

[1] "Contact" is defined by ORS 163.730(3) to include 11 different acts, some of which are communicative in nature and some of which are not. Because the word "threatening" in the accusatory instrument connotes some form of speech or communication, we must assume for purposes of this opinion that there is a cognizable issue under the speech provisions of the state and federal constitutions. *Compare Delgado v. Souders*, 146 Or App 580, 934 P2d 1132 (1997).

*v. Moyle*, 299 Or 691, 705 P2d 740 (1985), and that the stalking statute is constitutional for the same reasons that the harassment statute, as the court construed it, was held to be constitutional in *Moyle*.

We turn first to the state constitutional issue. In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), the Supreme Court delineated methodologies under Article I, section 8, for analyzing various types of laws affecting speech. Those methodologies were subsequently summarized and placed in numbered "categories" in *City of Eugene v. Miller*, 318 Or 480, 488, 871 P2d 454 (1994): (1) laws that focus on the content of communication, which, to survive constitutional scrutiny, may only restrain speech to an extent that is wholly confined within a well-established historical exception that existed "when the first American guarantees of freedom of expression were adopted"; (2) laws that focus on forbidden effects, but which expressly prohibit expression used to achieve those effects, which are tested for facial overbreadth; (3) laws that proscribe forbidden effects without reference to expression, which are tested for overbreadth only as applied. *See also State v. Plowman*, 314 Or 157, 838 P2d 558 (1992), *cert den* 508 US 974 (1993). This case comes within the second category. The focus of ORS 163.732 is on the forbidden effects of knowingly alarming or coercing. However, ORS 163.730 expressly includes communicative activities among the impermissible means by which the effect can be achieved. *See* note 1.

In that and in most other respects, this case is analogous to *Moyle*. ORS 166.065(1)(d) (now codified as ORS 166.065(1)(c)), the statute at issue in *Moyle*, provides:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, the actor:

"* * * * *

"Subjects another to alarm by conveying a telephonic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm[.]"

The court summarized the elements of the crime:

"1. The accused intends to harass, annoy or alarm another person;

"2. The accused conveys a written or telephonic threat either to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of his or her family;

"3. The addressee is actually alarmed by the threat; and,

"4. The threat is such that it reasonably would be expected to cause alarm." 299 Or at 698-99.

The court concluded initially that the harassment statute came within the second of the *Robertson* categories. It explained:

"Harm to another, in the form of alarm, is the focus of the statute. Speech and writing are merely the means, albeit the only prohibited means, of achieving the forbidden effect—actual and reasonable alarm. Thus, the statute is one focusing on effect rather than speech itself." *Id.* at 699.

The court then noted that legislation prohibiting the inducement of "fear of injury to persons and property," *id.* at 701, by speech or other means, had antecedents in breach of the peace and related statutes dating from territorial days; it therefore reasoned that "ORS 166.065(1)(d) does not run afoul of Article I, section 8, for the reason that the effect that it proscribes * * * merely mirrors a prohibition of words themselves." *Id.* However, the court continued:

"Verbal threats are a central element in the definition of the crime. If the statute potentially reaches substantial areas of communication that would be constitutionally privileged and that cannot be excluded by a narrowing interpretation or left to a case-by-case defense against the application of the statute, it would be unconstitutional. Therefore, it must be 'scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such "overbreadth." ' *State v. Robertson, supra*, 293 Or at 418." *Id.* at 701-02.

The *Moyle* opinion then proceeded to the overbreadth analysis. The court first suggested that "threats to commit non-violent" acts could not be legislatively prohibited, consistently with Article I, section 8, in order to achieve

the prevention of the effect at which the statute was aimed. *Id.* However, the court construed the statute as not abridging such speech. It explained:

"As noted earlier, the predecessor to the subsection now under review, former ORS 166.065(1)(c), did not require that the offender subject the victim to some defined harm. The current subsection of the harassment statute, however, not only requires harm to the victim, but defines the harm to be prevented. The statute requires that the victim be alarmed. We think 'alarm' in this statute means more than mere inconvenience or feelings of anguish which are the result of angry or imposing words; *it means being placed in actual fear or terror resulting from a sudden sense of danger*. Moreover, the first type of threat proscribed by the statute, 'threat to inflict serious physical injury,' indicates that the legislature sought to prevent the fear of physical harm to one's person. This is consistent with the traditional breach of the peace requirement that fear of imminent personal violence be instilled in the victim.

"We thus interpret the second type of threat proscribed by the statute, threats 'to commit a felony involving the person or property of that person or any member of that person's family' to cover only threats to commit *violent* felonies against those persons or property. We interpret the legislature's wording 'felony involving the person or property' to refer to felonies included in ORS Chapter 163 'Offenses Against Persons' and ORS Chapter 164 'Offenses Against Property.' Violent felonies in these chapters include the homicide and assault offenses, some versions of rape and other sexual crimes, kidnapping, robbery and arson." *Id.* at 702-03. (First emphasis supplied and second emphasis in original; footnote omitted.)

The court concluded its overbreadth analysis with the following interpretation of the language of the statute, together with a "narrowing construction":

"The statute, as written, requires neither proof of a specific intent to carry out the threat nor of any present ability to do so. However, the elements—actual alarm and the reasonableness of the alarm under the circumstances—have a similar purpose and effect. These elements limit the reach of the statute to threats which are so unambiguous,

unequivocal and specific to the addressee that they convincingly express to the addressee the intention that they will be carried out.

"* * * * *

"This much appears from the statute itself or is implied from its common law breach of the peace origins. Something more must be implied, if the statute is to survive the scrutiny that led us to invalidate the coercion statute in *State v. Robertson*, *supra*. The threat of violence to person or property must be a genuine threat. That is to say, the danger that the message will be followed by action must be found from the evidence to be objectively probable from the perspective of the factfinder, not only subjectively from the perspective of the addressee." *Id.* at 703-04.

The court held in *Moyle* that, as so construed and narrowed, the harassment statute did not violate Article I, section 8. It held further, after a review of applicable federal authority, that, for essentially the same reasons, the statute did not violate the First Amendment. *Id.* at 707-09.

ORS 163.732 is akin to the harassment statute in virtually all material respects. Although, unlike the latter, the stalking statute does not expressly require that a "threat" be made to the victim, a combination of provisions in ORS 163.730 and ORS 163.732 makes it clear that a threat or its equivalent must have been made in order for the crime of stalking to be found: ORS 163.730(1) defines "alarm" as meaning "to cause apprehension or fear resulting from the perception of danger"; ORS 163.730(2) defines "coerce" as entailing "force or threat"; and ORS 163.732(1)(c) requires that the victim's apprehension must relate to his or her personal safety or that of a family or household member. Considered together with the requirements of ORS 163.732(1) and (2), that the alarm be subjectively experienced and objectively reasonable, these provisions demonstrate that, at least where the alleged activity is carried out in whole or in part by communicative means, proof of stalking requires the establishment of a threat or something that does not differ meaningfully from one: For the victim to have an objectively reasonable fear or apprehension of a danger to personal safety, the communication giving rise to the fear must *reasonably* be perceivable as threatening.

■ ■　Defendant seeks to distinguish the stalking and harassment statutes and this case from *Moyle*, by reference to the fact that ORS 163.732 expressly requires only that the inducement of alarm or coercion be "knowing," while ORS 166.065(1)(d) required that the actor have an "intent" to harass or alarm. However, as the state maintains, the term "knowing," as used in this statute, is subsumed in the meaning of "intentional." ORS 163.732 requires that the victim's alarm be objectively reasonable and that its focus be on the victim's personal safety or that of someone personally close to the victim. We agree with the state's suggestion that the requisite subjective and objective conditions for the application of the stalking statute could not exist if the actor had not communicated the intent and did not have the ability to cause the harm that the victim reasonably fears. Here, as in *Moyle*, the need to show the actor's intent and ability to carry out the feared harm may be found in or implied from the statute, even though, here as there, "the statute, as written, requires" proof of neither.

■　Further, if the threatened harm to personal safety is *itself* intended by the actor, it is highly unlikely that the alarm that the *communication* of the threat engenders would not also be intended. Therefore, analogously to the court's implication in *Moyle* that the threatened harm must be intended under a statute that specified only that the victim's alarm must be intentionally caused, we interpret the stalking statute to require proof that the alarm as well as the threatened act must be intended by the speaker.

■　In sum, as we construe ORS 163.732, in its context, it does not differ materially, for purposes of Article I, section 8, analysis, from the harassment statute considered by the Supreme Court in *Moyle*. We construe the stalking statute, by its terms or as narrowed in a manner that its terms allow, in the manner indicated above, which parallels the way that the court construed the statute before it in *Moyle*. Similarly, for the reasons expressed in *Moyle*, 299 Or at 707-09, we further conclude that the statute as so construed also satisfies the requirements of the First Amendment. The First Amendment cases that were decided after *Moyle* and on which

defendant relies do not alter that conclusion.[2] We hold that the stalking statute is constitutional, as we have construed it, and that the trial court erred by allowing the demurrer.

Reversed and remanded for trial.

---

[2] Although our reasoning and conclusions regarding overbreadth appear to be consistent with the state's argument on *those* issues, the state also argues that the issues should not be reached, because the stalking statute comes within the same historical exception as did the harassment statute in *Moyle*, and *Robertson* holds that no further constitutional inquiry is necessary if a statute falls within a historical exception. The state asserts that, in *Moyle*, the court construed the harassment statute as being coextensive with its statutory and common-law antecedents. The state concludes that a "statute that, either as written or as construed, is within the scope of its common law analogue does not reach constitutionally protected expression; no narrowing is required." *See also State v. Garcias*, 296 Or 688, 679 P2d 1354 (1984).

It is not clear to us whether the court in *Moyle* treated breach of the peace and related statutory and common-law offenses as a historical exception. The only express reference to the historical exception principle in *Moyle* was in its discussion of the Waltham Black Act, which it concluded did not suffice to bring the harassment statute within the exception. *Id.* at 696-97. In any event, *Moyle* very clearly and expressly describes the decisive issue there as one of overbreadth. Moreover, the state's argument seems to us to present a distinction without a difference. It would not appear to be consequential whether the statute must be "narrowed" in the sense that that term usually conveys in overbreadth analysis, or narrowed to coincide with an extrinsic preexisting body of law, at least when, as here, no suggestion is made that a different meaning might emerge from the two different approaches.