Argued and submitted June 5, 1997, reversed April 1, 1998

Gary S. WAYT,
*Respondent,*

*v.*

Tracy GOFF,
*Appellant,*
*and*

STATE OF OREGON,
*Intervenor.*

(C950958CV; CA A91152)

956 P2d 1063

Philip M. Lebenbaum argued the cause for appellant. With him on the briefs was Hollander, Lebenbaum & Gannicott.

Larry J. Blake, Jr., argued the cause for respondent. With him on the brief was Blake & Schilling.

Robert M. Atkinson, Assistant Attorney General, argued the cause for intervenor State of Oregon. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Tracy Goff appeals the trial court's issuance of a permanent Stalking Protective Order (SPO) designed to prevent him from contacting Gary Wayt or Wayt's family. We review *de novo*, ORS 19.415(3),[1] and reverse.

The undisputed facts are as follows. Wayt is a Tigard Police Officer. He and Goff have known each other for a number of years. Wayt filed a uniform stalking complaint against Goff on August 31, 1995. In the complaint, Wayt alleged that Goff had been harassing him for 11 years, had threatened his life in 1993 and, more recently, had been to Wayt's neighborhood where he was seen looking toward Wayt's house. Wayt further alleged that Goff had made threatening comments to him during their last encounter. Pursuant to the complaint, Goff was served with a uniform stalking citation and ordered to appear in court and show cause why the court should not issue a permanent SPO under ORS 163.738.

At the show-cause hearing, Goff testified and described three instances in which he had been in contact with Wayt.[2] Wayt did not testify. After the hearing, the trial

---

[1] *See, e.g., Hanzo v. deParrie,* 152 Or App 525, 537, 953 P2d 1130 (1998).

[2] ORS 163.730 defines "contact" as including but not limited to:

"(a)  Coming into the visual or physical presence of the other person;

"(b)  Following the other person;

"(c)  Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d)  Sending or making written communications in any form to the other person;

"(e)  Speaking with the person by any means;

"(f)  Communicating with the other person through a third person;

"(g)  Committing a crime against the other person;

"(h)  Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i)  Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j)  Damaging the other person's home, property, place of work or school; or

"(k)  Delivering directly or through a third person any object to the home, property, place of work or school of the other person."

court found that Goff had intentionally, knowingly or recklessly engaged in repeated and unwanted contact with Wayt, thereby alarming Wayt, and that it was objectively reasonable for Wayt to have been alarmed. Consequently, the court issued a permanent SPO as authorized by ORS 163.738-(2)(a)(B), enjoining Goff from intentionally, knowingly or recklessly having any contact with Wayt or his family.

Goff raises numerous assignments of error, contending that the trial court erred when it found (1) that the contacts cited by Wayt in his initial complaint were "unwanted contact," as required by ORS 163.735(1)(a); (2) that the unwanted contact was "repeated," as defined by ORS 163.730(7),[3] when two of those instances occurred before the legislature had enacted the anti-stalking act; and (3) that Wayt was actually alarmed, as defined by ORS 163.730(1),[4] when Wayt did not testify at the hearing about his reaction to the contacts. Goff argues as well that the trial court erred when it required him to testify first at the hearing and when it refused to order Wayt to testify so as to allow Goff to cross-examine him.[5]

■     As an initial issue, Goff argues that the judgment granting the SPO is invalid because it contains language that this court has held to be unconstitutionally vague. The court issued an SPO on November 15, 1995, using a preprinted form that had various spaces for the court to use to enter its findings and order. The language of the form tracked an earlier version of the statute and specified that the court had found that the contacts on which the SPO was based were "without legitimate purpose." In *State v. Norris-Romine/Finley*, 134 Or App 204, 894 P2d 1221, *rev den* 321 Or 512 (1995), we held that that phrase was unconstitutionally vague. The legislature subsequently amended the statute to delete that phrase. Or Laws 1995, ch 353, §§ 2-4. Apparently,

---

[3] ORS 163.730(7) defines "repeated" as "two or more times."

[4] ORS 163.730(1) defines "alarm" as "to cause apprehension or fear resulting from the perception of danger."

[5] In addition, Goff contends that ORS 163.738 is overbroad in violation of Article I, section 8, of the Oregon Constitution. Goff's constitutional argument is the same one made to us in *State v. Rangel*, 146 Or App 571, 934 P2d 1128, *rev allowed* 325 Or 367 (1997), and *Delgado v. Souders*, 146 Or App 580, 934 P2d 1132, *rev allowed* 326 Or 43 (1997), and, based on those cases, we reject it.

the forms used by the court were not similarly amended. Wayt contends that the mistake is irrelevant, because the court issued an amended SPO on January 19, 1996, that did not contain the challenged language. That judgment was issued after Goff had filed his notice of appeal, and, as a consequence, the trial court lacked jurisdiction to issue it. Hence, the relevant SPO for our purposes is the original one. We need not decide, however, whether the inclusion of the objectionable language affected the validity of the SPO, because we conclude that there was insufficient evidence to find that the identified contacts were "unwanted and repeated," as required by the applicable statutes, and, accordingly, we reverse the trial court's judgment.

■■ Wayt's complaint referred to three contacts between him and Goff. Goff testified as to those same incidents at the hearing. Neither the complaint nor the trial record contains evidence of any other contacts. Hence, for the trial court to find repeated, unwanted contacts sufficient to support an SPO, it had to do so based on those three incidents alone.[6]

The first incident took place in 1985 when Wayt was a security guard at the Washington Square Mall in Tigard. At the hearing, Goff testified to the following events; Wayt did not offer any controverting testimony. On June 2, 1985, Goff had gone to the mall to place advertising leaflets on cars parked in the parking lot. He did so with the intent to be arrested, so that he could challenge the arrest as infringing on his right of free speech. While Goff was distributing the leaflets, Wayt approached him and asked him to stop. Goff first argued with Wayt and then turned to walk away, at which point Wayt grabbed him by the shoulder. Goff told Wayt that if he "put his hand on me again, it would be a mistake." Wayt then put his hand on his gun and unsnapped the

---

[6] We reject Goff's argument that the trial court could not consider incidents taking place before the enactment of ORS 163.738. That statute does not operate to penalize Goff's actions retroactively, but, rather, operates prospectively to regulate a pattern of conduct that is not actionable until the pattern has been completed. It is similar to RICO statutes that require a pattern of racketeering conduct. As long as one of the challenged acts occurs after the enactment of the legislation, the court may consider earlier, preenactment, acts to determine whether the required pattern of behavior exists. *See, e.g.,* ORS 166.175(4); *State v. Zelinka,* 130 Or App 464, 471-72, 882 P2d 624 (1994), *rev den* 320 Or 508 (1995).

clasp on the holster, and Goff told him, "If you take that out, I'll stick it up your ass." Goff then returned to his car.

The second incident took place on January 15, 1992. Wayt was by then a Tigard Police Officer. Goff testified that he had been issued a citation of some sort by Wayt and had appealed that citation to the district court. After the hearing on the citation, Goff testified that he came up behind Wayt as he left the courthouse and said, "Well, Gary, that's perjury number three. I guess it's time for a 12-34 and possibly the pill or a big pill."[7]

The final incident took place on August 26, 1995. Goff had gone to a garage sale at a house across the street from Wayt's home. At the garage sale, he purchased a tape recorder and a television stand. While he was at the sale, he looked across the street to Wayt's home a number of times. After Goff left the sale, Wayt called the Tigard Police Department and asked to have an officer stop Goff's truck so that Wayt could speak with Goff. Officer Morton did that and, while Morton was discussing the reason for the stop with Goff, Wayt arrived and confronted Goff. During the confrontation, Goff told Wayt that he knew where he lived and knew the names of Wayt's wife and daughters. After that incident, Wayt filed his complaint.

ORS 163.738 requires that, before an SPO may be issued, the court must find that Goff "intentionally, knowingly or recklessly engage[d] in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person." In *State v. Rangel*, 146 Or App 571, 934 P2d 1128, *rev allowed* 325 Or 367 (1997), we interpreted similar language in the criminal stalking statute, ORS 163.732. We concluded that, in order to avoid a conflict with the guarantee of free expression in Article I, section 8, of the Oregon Constitution, the statute had to be construed to require that the alleged stalker intend his or her expressive conduct to threaten another person, and that the alleged stalker also

---

[7] In his complaint, Wayt stated that Goff used the term "12-49," which Wayt believed to be an Oregon State Police code for a possible homicide. Goff testified that he used "12-34," which he believed to be the code for a crazy person. Our analysis does not depend on which account is correct.

have the means to carry out that threat. *Id.* at 576-77. We subsequently have applied that construction to the civil stalking statutes as well. *Hanzo v. deParrie,* 152 Or App at 525, 542, 953 P2d 1130 (1998). We conclude that, of the three incidents in the record, only the second incident, in which Goff followed Wayt out of the Washington County Courthouse, could fit the statutory requirements for an SPO. There is no evidence in the record from which to conclude that the contact with Wayt at Washington Square was unwanted by Wayt. Rather, the only evidence is that Goff went to the mall with the intention of being arrested and that he then became involved in an argument after he was confronted by Wayt. As for the third incident, there is insufficient evidence to establish that Goff did anything to cause alarm to Wayt while Goff was at the garage sale. Although there may have been sufficient evidence to establish that Goff's remarks *after* the traffic stop alarmed Wayt, that contact was initiated by *Wayt* and not by Goff, and there is no evidence that at any time during that contact Wayt told or otherwise communicated to Goff that the contact was unwanted. Hence, the statutory requirement that there be evidence of repeated unwanted contacts was not met and the trial court erred in issuing the SPO.

Reversed.