Argued and submitted October 28, reversed December 3, 2008

**Esther Alexandra VALERIO,**
*Petitioner-Respondent,*

*v.*

**Cynthia Lee VALERIO,**
*Respondent-Appellant.*

Linn County Circuit Court
071499; A136670

197 P3d 1124

Sharon Griffin argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Respondent appeals a stalking protective order (SPO), arguing that the evidence supplied by petitioner is legally insufficient. On *de novo* review, *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we agree and reverse.

Petitioner was born in Honduras and, until 2004, she lived there. In 2004, her father and respondent, his wife (and petitioner's stepmother), helped petitioner immigrate to this country. When petitioner arrived in this country, she moved in with her father and respondent in Albany and remained there for the next two years. During that time, petitioner's father and respondent made a number of expenditures for her, including a cell phone and an automobile. Repayment of those expenditures became a subject of disagreement among the family members.

In December 2006, petitioner left on a trip to Miami to visit her mother, whom she had not seen since she was a young child. When she returned, respondent met her at the Portland airport to drive her back to Albany. Petitioner returned from Miami with a large number of what respondent regarded as expensive presents. Respondent complained about the inappropriateness of returning with such extravagant gifts when she and her husband could not afford to provide such things to other members of the family. As the argument between petitioner and respondent escalated, respondent began screaming at petitioner. As she did so, she drove quite fast. According to petitioner's recollection, the speedometer reached 85 or 90 miles per hour. Petitioner asked respondent to slow down, but she would not.

Petitioner moved out of her father and respondent's house the following week. But she and respondent continued to encounter one another, and the encounters were frightening to petitioner.

In January 2007, petitioner finished her late-afternoon shift at a local drive-through coffee shop. Respondent came up to the window and screamed at petitioner,

yelling that she wanted petitioner to repay all the money that she had spent on petitioner. Respondent said that she was not going to leave her alone until petitioner paid the money or left the country.

In March 2007, petitioner went to a local credit union to make a deposit. As she completed her transaction at the drive-up window, she saw respondent park her car and walk towards the front of petitioner's car. Petitioner made a familiar gesture of disapproval with her middle finger, backed up, and drove away.

Finally, in May 2007, respondent left two telephone messages in which she informed petitioner that some mail had been left at her house. Petitioner called back and left a message of her own, telling respondent that she did not want respondent to call her again. Respondent called back and left another message, which petitioner recalls including the threat that "she wasn't going to leave me alone until I get out of the country, I didn't have anything to do here[.]"

Petitioner asked for an SPO based on the foregoing incidents. At trial, the court asked petitioner whether respondent ever had threatened her. Petitioner explained that respondent never explicitly threatened her but that "I assume when she said she's not going to leave me alone until I'm gone," and "I took that as a threat."

The trial court concluded that the March 2007 incident at the bank was "too ambiguous" to qualify as a prohibited contact under the SPO statutes. The trial court further concluded that the telephone messages did not qualify, because they contained no overt threats. The court, however, concluded that the January 2007 incident at the coffee shop did qualify as a prohibited contact. It also concluded that the December 2006 speeding incident also qualified. The court further found that both incidents reasonably put petitioner in fear and entered the SPO on the basis of those two contacts.

On appeal, respondent contends that neither of the two contacts was legally sufficient to warrant the issuance of an SPO. Petitioner has not appeared on appeal.

 Under ORS 30.866(1), a court may enter an SPO if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

A "contact," for purposes of the SPO statute, includes the following:

"(a) Coming into the visual or physical presence of the other person;

"(b) Following the other person;

"(c) Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d) Sending or making written or electronic communications in any form to the other person;

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person;

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j) Damaging the other person's home, property, place of work or school; or

"(k) Delivering directly or through a third person any object to the home, property, place of work or school of the other person."

ORS 163.730(3). To violate the statute, the person making the unwanted contacts must act with a culpable mental state—intentionally, knowingly, or recklessly—and the contacts must be repeated. Thus, to obtain an SPO, a petitioner must establish, at a minimum, that, on at least two occasions, the person contacted the petitioner, was subjectively "aware of a substantial and unjustifiable risk" that the contact was "unwanted by the recipient, and then consciously and unreasonably disregard[ed] that risk." *Delgado v. Souders*, 334 Or 122, 133, 46 P3d 729 (2002).

▬▬▬ Under Article I, section 8, of the Oregon Constitution, unwanted contacts that involve speech are subject to a heightened standard of proof. To qualify as a predicate unwanted contact, any contact that involves speech must constitute a threat—that is, the sort of communication that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999). The kinds of threatening contacts that may support the issuance of an SPO order do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)).

▬▬▬ Turning to the incidents at issue in this case, at the outset, we agree with the trial court as to the two incidents that the court concluded were legally insufficient to qualify as prohibited contacts within the meaning of the statute. The March 2007 incident at the bank was, indeed, too ambiguous. Respondent approached petitioner's car, and petitioner drove away. At trial, petitioner never explained why that incident caused her alarm. Likewise, the May 2007 telephone messages were legally insufficient under the rigorous standard imposed by *Rangel*. The messages certainly involved speech,

and none included any threats of imminent and serious personal violence.

That leaves the December 2006 speeding incident and the January 2007 contact at the coffee shop. We are not persuaded that both of those incidents are sufficient to support the issuance of an SPO.

In the case of the December 2006 speeding incident, it is not clear to us that the incident was an unwanted "contact" within the meaning of the statute. There is a complete absence of evidence that petitioner did not want respondent to pick her up at the airport. Thus, it cannot be said that respondent came within her visual or physical presence unwanted. Nothing that respondent said to petitioner during the drive home qualifies as an unwanted "contact" within the meaning of the statute, particularly under *Rangel*; there were no threats, certainly none of imminent and serious personal violence. Although respondent's conduct during the drive, particularly her driving at high speed, may have alarmed petitioner, it is unclear whether that conduct could convert the contact into an unwanted contact for purposes of the SPO statute. *See Wayt v. Goff*, 153 Or App 347, 353, 956 P2d 1063 (1998) (evaluating whether a contact became unwanted during the course of the contact).

We need not determine whether that incident sufficed, however, because a minimum of *two* qualifying contacts is required, and the January 2007 incident at the coffee shop clearly does not qualify. Respondent yelled at petitioner that she wanted petitioner to repay the money that had been spent on her and that she would not leave petitioner alone until she paid the money or left the country. When asked about what during that incident made her fearful, petitioner's only explanation was that "I assume when she said she's not going to leave me alone until I'm gone," and "I took that as a threat." Respondent's verbal assertion that she was not going to leave petitioner alone, however, does not satisfy the standards imposed by *Rangel*. Whether petitioner was correct in her assumption about the remark, the fact remains that verbal statements are not constitutionally sufficient to

support the issuance of an SPO in the absence of unequivocal threats of imminent and serious personal violence.

In short, petitioner failed to establish the requisites for issuance of an SPO. The trial court erred in reaching a contrary conclusion.

Reversed.