Submitted February 12, reversed April 23, 2014

Carli Jaye LANGFORD,
*Petitioner-Respondent,*

*v.*

Robert James LANGFORD,
*Respondent-Appellant.*

Marion County Circuit Court
11C20713; A149753

324 P3d 623

Denny Maison and Sara Williams filed the brief for appellant.

No appearance for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

Respondent appeals the trial court's entry of a stalking protective order (SPO), challenging the sufficiency of the evidence supporting the order. We agree with respondent that the evidence is not sufficient to support the SPO, and we therefore reverse.

Although respondent requests *de novo* review, we do not view this as an "exceptional case" in which *de novo* review is appropriate. ORS 19.415(3) (providing for *de novo* review at the court's discretion); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). Therefore, "we review the facts for any evidence and the legal conclusions based on those facts for errors of law." *Brown v. Roach*, 249 Or App 579, 580, 277 P3d 628 (2012) (citations and internal quotation marks omitted).

We state the facts consistently with that standard. Petitioner and respondent were previously in a romantic relationship and have a son, J. At a hearing before the trial court, petitioner presented evidence of contact by respondent on four separate dates. In April 2011, respondent and his mother arrived at petitioner's home to pick up J for supervised visitation. Petitioner testified that respondent engaged her in "negative conversation" about J's haircut. She asked respondent to stop and retreated into the garage with J. Respondent followed petitioner and J into the garage, "screaming and yelling, coming towards us, advancing on us." Petitioner testified that she was apprehensive because of previous incidents in 2003 and 2004 (seven and eight years earlier) during which respondent had physically abused her.

Petitioner testified that, in June 2011, respondent repeatedly called and texted her regarding J and threatened to call the police and the Department of Human Services (DHS) if she failed to respond. When petitioner did not respond, respondent drove by her house and had the Keizer Police Department perform a welfare check on the residence.

On September 3, 2011, respondent and his mother came to petitioner's home to pick up J. Petitioner accused

respondent of engaging in unsupervised time with J. Petitioner testified that respondent "advanced toward me at the step and stated that he wished I was dead. And I asked him and his mother to leave and [told him] that he would not be taking our son, he then again verbally started accosting me, and got in the car and left." Petitioner testified that she was afraid because of previous instances of physical abuse.

Finally, petitioner testified that, on September 12-13, 2011, respondent issued a missing child report for J and left messages with petitioner threatening to attempt to gain custody if she failed to return his calls within 15 minutes. According to petitioner, the messages stated that "people had driven by [petitioner's] house * * * that could confirm [she] was home now, and that [respondent] needed to know where [J] was." Petitioner testified that, in light of previous instances of physical abuse by respondent, the messages alarmed her.

Petitioner also testified that respondent was "not allowed to have contact with us unless it has to do with [J]" and that she had repeatedly asked respondent not to contact her unless it concerned J. Petitioner requested the SPO after receiving respondent's messages on September 13, 2011.

The trial court entered a permanent SPO under ORS 30.866. This appeal followed. In his sole assignment of error, respondent argues that the evidence was insufficient to support entry of the SPO because (1) two of the contacts were speech-based contacts that do not meet the test established in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999)[1]; (2) the two remaining contacts were permitted by petitioner and, thus, were not unwanted; and (3) even if the two remaining contacts were unwanted, respondent was not reckless with respect to the unwanted nature of those contacts.

"In order for an SPO to issue, a petitioner must show, by a preponderance of the evidence, intentional, knowing, or

---

[1] Although respondent characterizes the speech-related contacts as constituting two contacts, respondent actually describes speech-related acts that occurred on three separate dates (contacting petitioner regarding J's welfare in June 2011 and on September 12-13, 2011, and telling petitioner that he wished she were dead on September 3, 2011).

reckless conduct by the respondent against the petitioner or 'a member of [her] immediate family or household' that constitutes 'repeated and unwanted contact.'" *Brown*, 249 Or App at 583 (quoting ORS 30.866(1)(a)). "Repeated" means two or more times in the previous two years. ORS 30.866(6); ORS 163.730(7). "Contact" includes, among other things, "coming into the person's visual or physical presence, following the person, waiting outside the person's home, property, place of work or school, or sending or making written communications of any kind." *Pinkham v. Brubaker*, 178 Or App 360, 369, 37 P3d 186 (2001); *see* ORS 163.730(3). A petitioner must also show that she was subjectively "alarmed" or "coerced" by the contacts and that the alarm or coercion was objectively reasonable for "a person in the victim's situation." *Brown*, 249 Or App at 583; *see* ORS 30.866(1) - (2). Finally, the petitioner must show that "the contacts, cumulatively, caused her reasonably to fear for her personal safety." *Bryant v. Walker*, 190 Or App 253, 256, 78 P3d 148 (2003), *rev dismissed as improvidently allowed*, 337 Or 585 (2004); *see* ORS 30.866(1)(c).

In the case of an alleged speech-based contact, Article I, section 8, of the Oregon Constitution requires the petitioner to prove that the contact constitutes a threat—that is, "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Rangel*, 328 Or at 303. The threat must be "so unambiguous, unequivocal, and specific to the addressee that it convincingly expresses *to the addressee* the intention that it will be carried out * * * and that the actor has the ability to do so." *Id.* at 306 (emphasis in original). Threats do not include "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *Id.* at 303 (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)).

With those principles in mind, we conclude that the June, September 3, and September 12-13 incidents are not qualifying contacts for purposes of ORS 30.866. Because at least two qualifying contacts are required for issuance of

an SPO, we need not, and do not, address whether the April incident is a qualifying contact.

We analyze the June and September 12-13 incidents together because of their factual similarities. In June, respondent repeatedly called and texted petitioner regarding J and threatened to call the police and DHS if she did not respond. On September 12-13, respondent threatened to attempt to win custody of J if petitioner did not immediately return his calls regarding J's welfare. Because defendant's actions during those incidents were communicative, they must meet *Rangel*'s more stringent requirements before they may be considered qualifying contacts for purposes of ORS 30.866. *Christensen v. Carter/Bosket*, 261 Or App 133, 140-41, 323 P3d 348 (2014). We conclude that they do not. Respondent "threatened" to use legal means, such as the police, DHS, and judicial process, to ensure J's welfare. Respondent did not threaten violence, much less "imminent and serious personal violence." *Rangel*, 328 Or at 303. Moreover, respondent's "threats"—which involved only lawful methods—did not indicate that he was likely to resort to unlawful acts. *See Noriega v. Parsons*, 253 Or App 768, 771, 775, 296 P3d 522 (2012) (respondent's text messages to petitioner, in which he threatened to "stop being so nice" and to confront her at work, did not indicate that he intended to carry out any threats implicit in his messages, or that he was likely to engage in violence or other unlawful acts); *Goodness v. Beckham*, 224 Or App 565, 578, 198 P3d 980 (2008) (respondent's e-mail threatened legal action, not imminent violence, and, therefore, was insufficient to support an SPO under *Rangel*). Thus, we cannot conclude that the June and September 12-13 incidents instilled in petitioner an objectively reasonable fear of imminent and serious personal violence from respondent, nor that they were objectively likely to be followed by unlawful acts. *See Rangel*, 328 Or at 303. Thus, neither the June nor the September 12-13 incident is a qualifying contact for the purposes of ORS 30.866.

On September 3, 2011, respondent told petitioner, "I wish you were dead" after she accused him of spending unsupervised time with J. Respondent advanced toward petitioner, and she asked him to leave. He then "verbally

\*\*\* accosted" petitioner and drove away.[2] We conclude that respondent's statement to petitioner, "I wish you were dead," is more akin to an "impotent expression[] of anger or frustration" than "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Rangel*, 328 Or at 303; *Jennings v. Gifford*, 211 Or App 192, 196, 154 P3d 163 (2007) (telling the petitioner to "go to hell" over the phone did not constitute an unequivocal threat that instilled in the petitioner an objectively reasonable fear of imminent and serious personal violence). Thus, respondent's statement to petitioner that "I wish you were dead" is not a qualifying contact for purposes of ORS 30.866. We also conclude that the record fails to establish that any noncommunicative actions that defendant took toward petitioner during the September 3 incident would have given rise to objectively reasonable alarm. All the record shows is that respondent moved toward petitioner, she told him to leave, and he left. *See Christensen*, 261 Or App at 142-43 (noncommunicative portion of the respondent's conduct during a particular incident—shaking his clenched fists at the petitioner—did not give rise to objectively reasonable alarm); *Brown*, 249 Or App at 584 n 3 (noncommunicative portion of the respondent's conduct during a particular incident—running up to the petitioner aggressively—did not give rise to objectively reasonable alarm).

Because the April 2011 incident is the only remaining possible contact and two or more contacts are required, there was insufficient evidence to support the issuance of the SPO.

Reversed.

---

[2] Without knowing any details regarding the verbal accosting, we are unable to evaluate whether it satisfied the *Rangel* standard.