Submitted March 13, reversed December 3, 2014

Wayne MOHLER,
guardian ad litem,
*Petitioner-Respondent,*

*v.*

Charles MUCK,
*Respondent-Appellant.*

Yamhill County Circuit Court
CV110221; A149862

340 P3d 737

Brent J. Goodfellow and Johnstone & Goodfellow filed the brief for appellant.

Vincent A. Deguc filed the brief for respondent.

Before Duncan, Presiding Judge, and Hadlock, Judge, and Lagesen, Judge.

HADLOCK, J.

## HADLOCK, J.

Respondent appeals a judgment that imposed a permanent stalking protective order (SPO) against him, contending that the evidence was insufficient and that the trial court therefore erred in imposing it. We agree with respondent and reverse.

Respondent requests that we review the record *de novo*. *See* ORS 19.415(3) (the Court of Appeals may, in our sole discretion, review an equitable case *de novo*). This, however, is not an "exceptional case." *See* ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). "Therefore, we review the facts for any evidence and the legal conclusions based on those facts for errors of law." *Langford v. Langford*, 262 Or App 409, 410, 324 P3d 623 (2014) (internal quotation marks omitted).

Petitioner and her family live next door to respondent.[1] One night, at around 9:00 p.m., petitioner's father contacted law enforcement to complain that respondent was playing loud music. The music stopped when the sheriff arrived. The next day, petitioner, then 14, was playing basketball in the driveway of Fong, a mutual neighbor. Fong's house is sited diagonally across the street from petitioner's home and directly across from respondent's. One of Fong's sons was playing with petitioner when respondent arrived home. Respondent backed his truck into his driveway and crossed the street to check his mailbox, which was located near Fong's driveway. Petitioner heard respondent say, over his shoulder, that he would report her and her friend to the police for making noise, referring to the bouncing of the basketball. When asked, at trial, what effect respondent's statement had on her, petitioner stated that it "wasn't something I necessarily expected from him" and that it was "important

---

[1] We adhere to our practice in SPO cases of referring to the parties by their designation below. Accordingly, all references in this opinion to "respondent" are to respondent in the trial and all references to "petitioner" are to the child who sought the SPO (and not to her father, who filed the petition on her behalf as guardian *ad litem*). *See Schiffner v. Banks*, 177 Or App 86, 88 n 1, 33 P3d 701 (2001).

enough to let my dad know about." Petitioner went home. Her father arrived there a short time later.

About 20 minutes after that first incident, petitioner went back outside to walk over to the Fong residence to retrieve some items that she had left there. When she got to the end of her driveway, she heard respondent talking on a cell phone. He was standing in his driveway. Respondent was not talking loudly enough for petitioner to make out what he was saying. By the time she got to the bottom of Fong's driveway, however, respondent began to talk louder. When asked what respondent was saying, petitioner testified:

> "Things like[,] what goes around comes around. And I know that as if you were saying that he knew that was the way things worked. And that it was open now, and the war was on. And that I don't usually use language, but I knew he was talking about my dad because he was referring to a man [using a profane and unflattering term], and he was repeating that over ten times."

While she was in Fong's house, petitioner continued to hear respondent talking, but was unable to understand what he was saying. She then left Fong's to return home; while making that trip, she continued to hear respondent, who remained in his driveway, saying "[m]ainly the same things." When asked about the effect of hearing respondent's statements, petitioner stated: "I was * * * very shocked. And coming back to my house, I didn't think I would lose my composure, I didn't think I would get upset as I did, but when I told my dad what happened I got very upset and very concerned."

On the basis of those events, petitioner sought, and the trial court issued, an SPO against respondent. ORS 30.866 governs when a court may enter an SPO:

> "(1)   A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:
>
> "(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

The statute thus lays out the following requirements:

"First, a respondent's conduct must meet the statutory definition of 'repeated and unwanted contact' with the petitioner or a member of the petitioner's immediate family or household. Second, the petitioner must subjectively—*i.e.*, 'actually'—'be alarmed or coerced by the contacts' and that alarm or coercion must be objectively reasonable. Third, the contacts also must actually cause the petitioner apprehension about personal safety and that apprehension, too, must be objectively reasonable. Finally, the respondent must have acted with the requisite mental state."

*Braude v. Braude*, 250 Or App 122, 128-29, 279 P3d 290 (2012) (footnote and citations omitted).

Respondent contends that the evidence introduced at trial was insufficient in each of those respects, *i.e.*, that petitioner failed to prove unwanted contacts, that petitioner was "alarmed or coerced," that respondent acted with the requisite mental state, or that petitioner felt a reasonable apprehension for her personal safety or that of a family member.[2] Petitioner urges us to uphold the SPO on the ground that the evidence was sufficient as to each requirement.

We need not address each of respondent's arguments, for even assuming that ORS 30.866 was satisfied in all other respects, we conclude that any "apprehension regarding the personal safety of [petitioner] or a member of [petitioner's] immediate family or household" was not objectively reasonable under the circumstances. ORS 30.866(3).

---

[2] In addition, respondent's brief could be read to suggest that, because the "contacts" at issue involved speech, those contacts must also meet the constitutional requirements identified in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). In light of our conclusion that the statutory requirements were not met, we do not reach any constitutional issues in this case. *See Weatherly v. Wilkie*, 169 Or App 257, 8 P3d 251 (2000) (declining, in SPO case, to reach potential *Rangel* issues when concluding that the requirements of ORS 30.866 were not satisfied in any event).

We assess the reasonableness of a person's apprehension about personal safety by examining the cumulative effect of the relevant unwanted contacts on that person. *Christensen v. Carter/Bosket*, 261 Or App 133, 139-40, 323 P3d 348 (2014). Respondent stated that he would call the police because of the noise that petitioner and her friend made as they bounced a basketball, and, about twenty minutes later, respondent made statements, apparently while speaking on a telephone, along the lines of, "what goes around comes around," "it was open now," and "the war was on," which petitioner took to refer to her father.

As to petitioner's personal safety, respondent's suggestion that he would call the police to report petitioner and her friend is, at best, of minimal significance. A statement of intent to get law enforcement involved over a bouncing basketball could prompt any number of reactions, but it would not objectively provoke fear for personal safety, nor would it cast subsequent conduct in a more ominous light. As for respondent standing in his driveway and talking into his cell phone as petitioner walked by, the record includes no evidence that respondent left his property, approached petitioner, brandished any weapons, made any threatening gestures, or even so much as looked in her direction. *Cf. Delgado v. Souders*, 334 Or 122, 124-28, 46 P3d 729 (2002) (evidence sufficient to show a reasonable apprehension regarding personal safety where a relative stranger persistently and surreptitiously followed the petitioner, and repeatedly appeared next to her, without warning, when she was alone). Finally, we note that petitioner understood respondent's statements to refer to her father, not her. In sum, any apprehension that petitioner had for her own personal safety was not objectively reasonable under those circumstances.

Of course, an SPO could issue if petitioner held a reasonable apprehension for the personal safety of a family member. On that score, we acknowledge the evidence indicating that petitioner was concerned for her father, in light of her understanding that respondent was referring to him while talking on the phone. But the record includes no evidence of any prior contacts between respondent and petitioner or her family that might provide some basis for concluding that it was reasonable for petitioner to consider

respondent's statements as anything more than the bluster of an irritated neighbor. *Accord Braude*, 250 Or App at 130 ("[T]he parties' past relationship was not so characterized by violence or abuse as to make the more recent contacts objectively threatening."). That is, nothing in the record suggests that petitioner had any reason to believe that respondent was physically belligerent or violent, or that his generalized references to "war" and retribution were something other than, at most, a vague expression of an intent to retaliate—in commensurate manner—against petitioner's father for calling the authorities on him over a noise complaint on the night before. Petitioner might well have reasonably believed that respondent harbored some inclination to make trouble for her father, but that is not enough to create a reasonable belief that her father's personal safety was at risk.

No doubt, respondent's behavior fell somewhere short of common decency, but the SPO statute sets a higher bar than that. It requires a reasonable apprehension for the personal safety of the petitioner or a member of the petitioner's family. On this record, that requirement was not met.

Reversed.