Submitted March 21, reversed May 17, 2017

Dawn Marie GREENWADE,
*Petitioner-Respondent,*

*v.*

Genisis TEPPER,
*Respondent-Appellant.*

Jackson County Circuit Court
16SK00020; A161624

396 P3d 990

Tracey R. Howell filed the brief for appellant.

James A. Wallan and Hornecker Cowling LLP filed the brief for respondent.

Before Sercombe, Presiding Judge, and DeHoog, Judge, and Flynn, Judge pro tempore.

**FLYNN, J. pro tempore**

Respondent appeals from the trial court's entry of a stalking protective order (SPO) pursuant to ORS 30.866(1).[1] Respondent argues that the trial court erred when it granted the order because the evidence does not permit a finding that respondent engaged in "repeated and unwanted contact" that meets the requirements for issuance of an SPO. We agree with respondent and, accordingly, reverse.

ORS 30.866(1) provides that a person may obtain an SPO against another person if:

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

As we have recently emphasized, the statutory requirement of "repeated" contact means that there must be "two or more" qualifying contacts. *Bachmann v. Maudlin*, 283 Or App 548, 549, 389 P3d 413 (2017) (internal quotation marks omitted). Each of those contacts, "'individually, must give rise to subjective and objectively reasonable alarm or coercion.'" *Id.* (quoting *Reitz v. Erazo*, 248 Or App 700, 706, 274 P3d 214 (2012)). Moreover, the unwanted contacts cumulatively must "give rise to subjective apprehension regarding the petitioner's personal safety or the personal safety of a member of the petitioner's immediate family or household, and that apprehension must be objectively reasonable." *Id.* (internal quotation marks omitted).

In addition, in order to satisfy the speech protections of Article I, section 8, of the Oregon Constitution, an SPO may not be based on expressive contacts—those that

---

[1] We will use the term petitioner to refer to the individual for whom the SPO was filed, although the named petitioner is her guardian *ad litem*.

involve speech—unless the speech is a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).

The trial court issued the SPO against respondent in this case based on two incidents. On appeal, respondent does not dispute that the incidents meet the definition of "contact,"[2] but she contends that neither contact qualifies as a basis for issuing the SPO.

Although we have discretion to conduct *de novo* review in SPO cases, respondent does not request that we do so, and we do not perceive any reason to review this case *de novo*. *See* ORS 19.415(3) (*de novo* review is discretionary in equitable actions); ORAP 5.40(8) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). Thus, we review the trial court's legal conclusions for errors of law and are bound by the court's findings if "any evidence" supports them. *Roth v. King*, 272 Or App 381, 382, 356 P3d 153 (2015). In addition, because the trial court granted the SPO, "we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the petitioner." *Noriega v. Parsons*, 253 Or App 768, 770, 296 P3d 522 (2012). We describe the facts in accordance with that standard.

Respondent and petitioner attended the same high school. They were friends at one time but the friendship deteriorated in their junior year after respondent's boyfriend moved in with petitioner's family. Petitioner severed their friendship, respondent became angry, and events followed that led to petitioner filing for an SPO. The first contact that the trial court relied upon occurred during the fall of the following school year at a high school football game. Petitioner was watching the game when respondent and a group of respondent's friends came to stand in front of the area where petitioner was standing. Petitioner overheard

---

[2] For the definition of "contact" that is applicable to ORS 30.866, the legislature has provided a list of many manners of interaction that the term "'contact' includes but is not limited to." ORS 163.730(3).

respondent say, "Wouldn't it be funny if I maced her?" Petitioner interpreted the statement to be directed to her.

The second incident occurred over winter break of the same year when, at the direction of respondent, another student put sardines on petitioner's car.[3] Petitioner sought an SPO, and, after a hearing, the trial court issued a permanent SPO.

On appeal, respondent argues that neither contact qualifies as a basis for issuing an SPO under ORS 30.866(1). As to the first incident, respondent argues that the incident involved speech and does not satisfy the heightened standard necessary to be a qualifying contact, under *Rangel*, 328 Or at 303. Respondent also argues that the second incident is not a qualifying contact because it did not give rise to subjectively or objectively reasonable alarm or coercion. We agree.

In the incident at the football game, the aspect that petitioner described as causing alarm is respondent's statement to her companions, "Wouldn't it be funny if I maced her?" Thus, to qualify as a contact that supports the SPO, that expressive encounter must satisfy the *Rangel* test. It does not. As noted above, that test requires an "unequivocal" threat that instills "a fear of imminent and serious personal violence" and that is "objectively likely to be followed by unlawful acts." *Id.* The threat must be "so unambiguous, unequivocal, and specific *to the addressee* that it convincingly expresses to the addressee the intention that it will be carried out." *Id.* at 306 (emphasis in original). We applied the *Rangel* test in *Langford v. Langford*, 262 Or App 409, 412, 324 P3d 623 (2014), in which we held that the respondent's statement to the petitioner, "I wish you were dead," was not a qualifying contact under ORS 30.866. We concluded that the statement was "more akin to an impotent expression of anger or frustration" than to an unequivocal communication that instills a fear of "imminent and serious personal violence from the speaker." *Id.* at 414 (internal quotation marks and brackets omitted).

---

[3] In the trial court, petitioner also pointed to a third incident, in which respondent drove by petitioner's house and yelled obscenities. However, the trial court did not find that incident to be a qualifying contact, and petitioner does not suggest on appeal that the incident supports the court's issuance of the SPO.

Respondent's statement in petitioner's presence is even more equivocal and comes no closer to satisfying the *Rangel* test than did the statement in *Langford*. Even if petitioner correctly assumed that she was the "her" to whom respondent referred, respondent's statement to her companions neither unambiguously nor unequivocally expressed that respondent intended to spray mace at petitioner. Petitioner testified that, at the time that respondent made the comment, respondent had mace on her keychain and petitioner felt "like [respondent] would absolutely have turned around and maced [her] just because of the behavior that [respondent] ha[d] portrayed in the past." However, there is no evidence that respondent's past behavior involved personal violence or other conduct that made it objectively likely that she would assault petitioner with mace. Respondent's comment may have been offensive, hostile, and aggressive, but that is not enough to satisfy the *Rangel* standard. *See Brown v. Roach*, 249 Or App 579, 585, 277 P3d 628 (2012) (observing that we have repeatedly held that "offensive, hostile, and aggressive statements are not enough to satisfy the standard [set out in *Rangel*]"). In addition, we conclude that the nonexpressive aspects of that contact—respondent moving to stand in front of the area where petitioner was standing—could not have produced objectively reasonable alarm, even taken in context with the statement. *See id.* at 584 n 3 (aggressively running up to the petitioner with clenched fists and "fury in her eyes" did not give rise to objectively reasonable alarm).

The second incident that the trial court relied upon to support the SPO also fails to rise to the level of a qualifying contact under ORS 30.866(1). Although it is undisputed that a third person put the sardines on petitioner's car, the trial court found that respondent directed the action.[4] Petitioner argues that she was subjectively alarmed by this incident because she figured that "maybe [respondent] would take it even further than that to, like come at me" and that this frightened her. We conclude, however, that it was not objectively reasonable for a person in petitioner's situation to be "alarmed," as that term is defined for purposes of an SPO.

---

[4] Respondent assumes, for purposes of her argument, that the incident meets the definition of a "contact" between respondent and petitioner.

As used in ORS 30.866, "alarm" is the "apprehension or fear resulting from the perception of danger," ORS 163.730(1), and "danger" refers "to a threat of physical injury, not merely a threat of annoyance or harassment." *Brown*, 249 Or App at 586. In *Brown*, we reversed an SPO that the trial court issued after confrontations between feuding neighbors escalated to contacts that caused the petitioner subjective alarm. *Id.* at 580. One of the contacts that we concluded did not qualify for issuance of an SPO was the respondent's act of spraying the petitioner and her family with a garden hose, an act that the petitioner believed "was so outrageous that it demonstrated that respondent was likely to injure her or her family in the future." *Id.* at 587. We emphasized that the incident did not give rise to an "objectively reasonable fear of physical injury at the time" because the act did not endanger anyone and that nothing about the broader context of the incident gave "rise to an objectively reasonable apprehension or fear of physical injury in the future." *Id.*; *see also Campola v. Zekan*, 275 Or App 38, 43, 362 P3d 1205 (2015) (act of repeatedly walking in front of petitioner's restaurant dressed in a rat suit, although "annoying or upsetting"—particularly in the context of a broader dispute—could not give rise to objectively reasonable alarm).

Similarly, there is no evidence here that anyone was endangered by the act of smearing fish on petitioner's car and no evidence that, in the broader context of the parties' feud, the incident would cause an objectively reasonable fear of physical injury in the future. Petitioner testified that the incident caused her to fear that respondent would "maybe" cause physical injury in the future. Even if that qualifies as subjective "alarm," however, the broader context of the incident does not give rise to an objectively reasonable fear of physical injury in the future. There is distinct line between respondent being willing to smear fish on petitioner's car and respondent being willing to engage in physical violence, and there is no evidence that respondent ever crossed that line.

Reversed.