Argued and submitted June 9, reversed October 7, 2020

T. M. E.,
*Petitioner-Respondent,*

*v.*

Jennifer STROPE,
*Respondent-Appellant.*

Yamhill County Circuit Court
19SK02177; A172290

476 P3d 972

Respondent appeals a judgment and permanent stalking protective order (SPO) prohibiting contact with petitioner. Respondent leased church space from petitioner. After petitioner terminated their lease agreement and asked respondent to vacate the church, two incidents ensued giving rise to the petition, one of which involved respondent allegedly poking her finger in petitioner's chest. On appeal, respondent argues that the evidence presented was insufficient to establish, among other things, the existence of repeated unwanted contacts. *Held*: The trial court erred in issuing the SPO. Even assuming the finger-poking contact was unwanted and that petitioner was subjectively alarmed by that contact, there was insufficient evidence for the trial court to have concluded that petitioner's alarm was objectively reasonable. Because that contact did not qualify as an "unwanted contact" for the purposes of the SPO, the record lacked sufficient evidence of repeated unwanted contacts, even assuming that the second contact could have qualified. *See* ORS 163.738(2)(a)(B) (requiring repeated unwanted contacts to issue an SPO).

Reversed.

John T. Mercer, Judge pro tempore.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

No appearance for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Reversed.

## MOONEY, J.

Petitioner obtained a permanent stalking protective order (SPO) against respondent. Respondent appeals the SPO judgment, challenging the sufficiency of the evidence. We agree that the record does not support the issuance of the SPO and we, therefore, reverse.

*De novo* review is neither requested nor warranted. *See* ORAP 5.40(8)(c). We review the factual findings for any supporting evidence and the legal conclusions based on those facts for legal error. *Miller v. Hoefer*, 269 Or App 218, 219, 344 P3d 121 (2015). We presume that the trial court resolved any disputed facts consistent with the outcome it reached. *Id*. "When the sufficiency of the evidence supporting an SPO is challenged on appeal, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *King v. W. T. F.*, 276 Or App 533, 537, 369 P3d 1181 (2016) (internal quotation marks omitted).

We state the pertinent facts consistent with that standard. Petitioner is the senior pastor at a church in Sheridan, Oregon. Respondent leased space from the church and ran a school there. Petitioner and respondent, therefore, stood in the relationship of landlord and tenant. It was in the context of that relationship that a dispute arose between them that, in turn, led to petitioner demanding that respondent no longer use the church facilities for her school. Petitioner notified respondent that she was required to vacate the premises within 14 days. Petitioner saw respondent at the church on August 7, 2019, still during that 14-day period, and he asked her if she would have the school's belongings removed from the church by the deadline. Respondent explained that her husband was out of town and that "they weren't going to be able to get their items out for quite sometime." According to petitioner, respondent then told him that "there was a special place in hell for pastors like you" and blamed him for the school's closure while "poking" her finger in his chest.

On August 21, 2019, petitioner sent a second notice to respondent confirming that she had not vacated the premises by the deadline and that the school was required to vacate the church no later than September 1, 2019. That same day, when petitioner returned to the church, respondent and her father pulled into the church driveway immediately after him. Respondent and her father exited their vehicle and waited for petitioner to get out of his car. When petitioner did so, respondent's father said, "[W]e need to talk," "in a very gruff voice." Petitioner told respondent and her father that he would not speak to them unless they had a "better attitude." Respondent was "very angry" and "pushed past" her father. She pushed petitioner with both hands and "swung open handed," "grazing" petitioner with her fingertips. She then ripped up the August 21, 2019, notice, threw it at petitioner, and then threw "a handful of keys" at him, which "bounced off" his face. Respondent "scream[ed]" at petitioner using "F bombs" and other expletives to express her belief that petitioner was "a miserable excuse for a pastor." She told petitioner to keep the items that remained in the church. Petitioner said that he was going to call 9-1-1, at which point respondent and her father left.

The following day, petitioner sought and obtained a temporary SPO against respondent[1] on the basis of the August 7 and August 21 contacts. Approximately one month later, a hearing was held to determine whether the SPO would be dismissed or made permanent. The parties appeared for the hearing and, after taking testimony and considering arguments, the trial court found petitioner's "version of both incidents to be believable" and issued a permanent SPO against respondent.

Respondent appeals, arguing that there was insufficient evidence to support the permanent SPO. In particular, she argues that there was insufficient evidence to establish (1) the existence of two unwanted contacts and (2) the requisite level of alarm or coercion. As explained below, we agree that the record is insufficient, as a matter of law, to support the trial court's conclusion that the first contact, on August 7,

---

[1] Petitioner also sought a temporary SPO against respondent's father, but the trial court denied that petition.

was a qualifying contact for purposes of issuing the SPO. Because the statute requires two qualifying contacts, we thus reverse without discussing the second encounter.

Under ORS 30.866(1),

"[a] person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

To summarize, as pertinent here, the petitioner must prove at least two unwanted contacts, each contact must give rise to subjective alarm,[2] that alarm must be objectively reasonable, and, cumulatively, the contacts must cause petitioner objectively reasonable apprehension for the petitioner's personal safety or that of someone in the petitioner's family or household. ORS 163.730(7) ("'Repeated' means two or more times."); *C. P. v. Mittelbach*, 304 Or App 569, 575, 468 P3d 496 (2020). "Alarm," for purposes of obtaining an SPO, means to "cause apprehension or fear resulting from the perception of danger," ORS 163.730(1); "danger," in turn, refers to a "threat of physical injury, not merely a threat of annoyance or harassment," *Brown v. Roach*, 249 Or App 579, 586, 277 P3d 628 (2012). It is petitioner's burden to prove each element by a preponderance of the evidence. ORS 30.866(7).

Here, even assuming that the record supports the trial court's implicit findings that the contact on August 7— which included respondent poking her finger in petitioner's chest—was unwanted, and that petitioner was subjectively

---

[2] There is no suggestion of coercion in this case.

alarmed by that contact, there is insufficient evidence from which the trial court could conclude, given the circumstances, that petitioner's alarm was objectively reasonable. ORS 30.866(1)(b); *see Greenwade v. Tepper*, 285 Or App 646, 647, 396 P3d 990 (2017) (each contact "individually, must give rise to subjective and objectively reasonable alarm" (internal quotation marks omitted)).

Importantly, we consider "all of the circumstances of the parties' relationship" in evaluating the objective reasonableness of petitioner's alarm. *Brown*, 249 Or App at 587. The August 7 contact occurred on church property while respondent was still a bona fide tenant there. It is true that petitioner, as landlord, gave notice requiring respondent to vacate the property. But the August 7 contact occurred during the 14-day window that petitioner had defined as the time for respondent to remove school belongings from church property. Respondent not only had permission to be on church property, petitioner insisted that she use that time frame to come to the church and remove her property. While respondent was at the church, it was petitioner who approached her to find out whether she would be able to meet his deadline. We do not suggest that petitioner, simply by his presence, invited the poke in the chest or the comment about "pastors like you."[3] But, petitioner's role in the encounter is a factor that we consider in the overall analysis.

Notably, the August 7 incident occurred as the parties' landlord-tenant relationship was terminating, *see generally Daves v. Kohan*, 282 Or App 243, 253, 385 P3d 1161 (2016), *rev den*, 361 Or 439 (2017) (considering parties' landlord-tenant relationship as factor in determining whether SPO was warranted), and the record is clear that

---

[3] Speech-based contacts do not alone qualify as "contacts" for SPO purposes unless they "rise to the level of a threat," that is, "the sort of communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Miller*, 269 Or App at 223 (internal quotation marks omitted); *see also id.* (distinguishing "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee" (internal quotation marks omitted)). Nevertheless, relevant speech that does not meet that heightened standard may still be considered as context when evaluating other contacts. *Reitz v. Erazo*, 248 Or App 700, 706, 274 P3d 214 (2012).

respondent was frustrated and upset by that unilateral termination. Her extreme reaction to petitioner's inquiry about whether she would have her belongings removed from the church by the deadline was no doubt unwelcome and uncomfortable to petitioner. However, given the circumstances, even if petitioner was subjectively alarmed by that behavior— which included the nonspeech conduct of "poking" his chest—such alarm was not objectively reasonable. That is, respondent's conduct would not cause a reasonable person in petitioner's situation to be apprehensive or afraid due to a perception of danger. In other words, respondent's conduct would not cause a reasonable person in petitioner's situation to be apprehensive or afraid due to the perception of a "threat of physical injury" rather than "merely a threat of annoyance or harassment." *Brown*, 249 Or App at 586; *see also King*, 276 Or App at 538 (victim's subjective alarm must be objectively reasonable "for a person in the victim's situation"); *see also, e.g.*, *Greenwade*, 285 Or App at 651 (not objectively reasonable for person in the petitioner's situation to be alarmed by the respondent's conduct—directing third person to smear sardines on the petitioner's car—where there was no evidence that anyone was endangered or, "in the broader context of the parties' feud," that the incident would cause an objectively reasonable fear of physical injury in the future); *Christensen v. Carter/Bosket*, 261 Or App 133, 142-43, 323 P3d 348 (2014) (noncommunicative portion of the respondent's conduct during a particular incident— shaking his clenched fists at the petitioner—did not give rise to objectively reasonable alarm); *Brown*, 249 Or App at 588-89 (concluding that alarm caused by the respondent's act of spraying the petitioner with garden hose was not objectively reasonable and, thus, not a qualifying contact, where there was no evidence indicating a threat of physical injury and behavior was not "inexplicable" given the circumstances between the parties); *Reitz v. Erazo*, 248 Or App 700, 706, 274 P3d 214 (2012) (the respondent pushing the petitioner approximately 10 times over two years while both were shopping did not provide basis for objectively reasonable alarm). Similarly here, the evidence is insufficient to show that respondent's August 7 conduct would reasonably cause apprehension or fear resulting from the perception of a threat of physical injury, rather than merely a threat

of annoyance or harassment. Her behavior is, rather, correctly viewed as "hyperbole, rhetorical excess, and impotent expressions of anger or frustration" not intended to be addressed by the issuance of an SPO. *Van Buskirk v. Ryan*, 233 Or App 170, 176, 225 P3d 118 (2010) (internal quotation marks omitted). The "legislature has not authorized trial courts to issue SPOs for unwanted contact that is unsettling, unusual, or unpleasant." *Huber v. Landolt*, 267 Or App 753, 760-61, 341 P3d 175 (2014).

In sum, petitioner offered two potential contacts to support his request for an SPO. The first one does not qualify as an unwanted contact that would cause a reasonable person in the same circumstances to be alarmed as that term is understood in the SPO context. Because we conclude that it does not, the record contains insufficient evidence of repeated unwanted contacts, regardless of whether the second encounter could qualify. *See* ORS 163.738(2)(a)(B) (requiring repeated unwanted contacts for issuance of an SPO); ORS 163.730(7) ("'Repeated' means two or more times."); *Valerio v. Valerio*, 224 Or App 265, 271, 197 P3d 1124 (2008) (declining to analyze the sole remaining incident in light of the two-contacts requirement); *Outlaw v. Richey*, 301 Or App 18, 33, 456 P3d 348 (2019) (also declining to analyze the sole remaining incident in light of the two-contacts requirement).

The trial court erred in issuing the permanent SPO.

Reversed.