***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted January 25, reversed March 8, 2023

P. M.,
*Petitioner-Respondent,*

*v.*

Savanna JOHN,
*Respondent-Appellant.*

Polk County Circuit Court
21SK01378; A176390

Diane Morse, Judge pro tempore.

Mark J. Geiger filed the brief for appellant.

No appearance by respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed.

**AOYAGI, P. J.**

Respondent appeals a judgment entering a permanent stalking protective order (SPO), ORS 30.866, against her for the protection of petitioner. Petitioner does not appear on appeal. As explained below, we agree with respondent that the trial court erred in concluding that the statutory requirements were satisfied. Accordingly, we reverse.

Under ORS 30.866, to obtain an SPO, petitioner was required to show that respondent intentionally, knowingly, or recklessly engaged in "repeated and unwanted contact" with petitioner or a member of petitioner's "immediate family or household," ORS 30.866(1)(a), which caused petitioner "reasonable apprehension" regarding her own personal safety or that of her immediate family or household member, ORS 30.866(1)(c). To qualify as a "contact" for SPO purposes, the contact must have subjectively "alarmed" or "coerced" the petitioner, and it must be "objectively reasonable for a person in [her] situation to have been alarmed or coerced." ORS 30.866(1)(a), (b). "Alarm" is the "apprehension or fear resulting from the perception of danger," ORS 163.730(1), and "danger" refers "to a threat of physical injury, not merely a threat of annoyance or harassment." *S. A. B. v. Roach*, 249 Or App 579, 586, 277 P3d 628 (2012). An SPO may be issued after two or more qualifying contacts. ORS 163.730(7) (defining "repeated").

Special rules apply to speech-based contacts. "If the respondent's conduct involves speech, Article I, section 8, of the Oregon Constitution requires the petitioner to prove that it is a 'threat,' as specified in *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999), that is, 'a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts.'" *S. A. B.*, 249 Or App at 583-84. A threat differs from "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *Rangel*, 328 Or at 303 (internal quotation marks omitted).

On appeal, respondent argues that petitioner failed to prove two or more qualifying contacts. That is a legal

question that we review for legal error. *S. A. B.*, 249 Or App at 580. Specifically, we must determine whether respondent's conduct—as found by the trial court—meets the requirements for the issuance of an SPO. *Id.*

As context for petitioner's state of mind—not as a qualifying contact itself—the trial court placed considerable weight on the initial incident that ended the parties' friendship, which was when respondent said in a text message to petitioner that she had had sex with petitioner's boyfriend (who is respondent's cousin). That incident led to an informal agreement that petitioner and respondent should not have any further contact. The court did not reject respondent's testimony that she meant the text message as a "joke" but stated that, if that was her intent, she had assumed the risk of saying something "that ended up being devastating" to petitioner and her relationship.

The trial court found that, after the no-contact agreement was made, three qualifying contacts occurred, which were the same three contacts cited in petitioner's SPO petition: (1) respondent approached petitioner and her friends at Spirit Mountain Casino, said that she liked petitioner's hair, rudely looked at petitioner's stomach (petitioner was pregnant), and stayed nearby until petitioner and her boyfriend decided to leave; (2) the next day, respondent drove by petitioner and her boyfriend's place of business, which is on a main road in Keizer, and turned and looked at petitioner, moving her body in a way that petitioner interpreted as "shoving it in my face" and "very offensive"; and (3) later the same day, petitioner called respondent to tell her to leave her alone and not drive by the business like that again, and, during the ensuing conversation, respondent asked petitioner where she was so she "could beat [her] butt."[1] The trial court found that petitioner was subjectively afraid of respondent and had moved to another town to get away from her, that respondent knew that petitioner did not want contact with her, and that it was objectively reasonable

---

[1] There was some testimony regarding petitioner and respondent driving by one another on River Road a few weeks after the incidents discussed in the text. However, we do not understand the trial court to have relied on that event in issuing the SPO, and, in any event, it would not be a qualifying contact.

for petitioner to be concerned when respondent violated the agreement as she did.

We agree with respondent that petitioner failed to prove two or more qualifying contacts for an SPO, under the legal standard previously described. The casino encounter was subjectively alarming to petitioner, but it was not objectively alarming, in the sense of creating an objectively reasonable fear of threatened physical injury. The same is true of the drive-by incident. No doubt those contacts were unwanted and subjectively alarming to petitioner, and they may have violated the parties' informal agreement, but they do not meet the legal standard for qualifying contacts for an SPO. Annoying or harassing conduct does not give rise to a qualifying contact, unless it crosses the line into objectively alarming conduct as defined in the SPO statute.[2]

Having concluded that the casino encounter and the drive-by incident were not qualifying contacts, we need not address the butt-kicking remark, because there must be at least two qualifying contacts. The trial court erred in issuing the SPO.

Reversed.

---

[2] For example, in *M. W. V. H. v. Van Hoff*, 307 Or App 620, 628, 478 P3d 1012 (2020), we held that the respondent's act of turning her car around to follow the petitioner in a parking lot and then "flash[ing] him a 'crazed smile,'" on the day that the petitioner was attending grand jury proceedings for the respondent's alleged crimes against him, was not objectively alarming, because the evidence did not allow an inference that she "posed a physical safety risk to petitioner." In *T. M. E. v. Strope*, 307 Or App 156, 161-62, 476 P3d 972 (2020), we held that the respondent's "extreme reaction" to a request relating to the end of a landlord-tenant relationship, including poking the petitioner in the chest, was not objectively alarming, because it did not indicate "a threat of physical injury, rather than merely a threat of annoyance or harassment." In *D. M. G. v. Tepper*, 285 Or App 646, 651, 396 P3d 990 (2017), we held that the smearing of fish on the petitioner's car did not "endanger" anyone and that there was "no evidence that, in the broader context of the parties' feud, the incident would cause an objectively reasonable fear of physical injury in the future." In *S. A. B.*, 249 Or App at 587, we held that the respondent's act of spraying the petitioner's family members with water while they took down a fence along a disputed property line was "annoying and harassing, but not dangerous," and therefore not objectively alarming for SPO purposes.