No. 292          May 1, 2024          441

*This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

M. A. H.,
*Petitioner-Respondent,*

*v.*

DAVID WAYNE DEARDORFF,
*Respondent-Appellant.*

Clackamas County Circuit Court
21SK03390; A177775 (Control)

J. D. H.,
*Petitioner-Respondent,*

*v.*

DAVID WAYNE DEARDORFF,
*Respondent-Appellant.*

Clackamas County Circuit Court
21SK03437; A177773

M. A. H.,
*Petitioner-Respondent,*

*v.*

LISA DEARDORFF,
*Respondent-Appellant.*

Clackamas County Circuit Court
21SK03389; A177774
Clackamas County Circuit Court

Ulanda L. Watkins, Judge.

Argued and submitted May 10, 2023.

George W. Kelly argued the cause and filed the brief for appellants.

No appearance for respondents.

Before Powers, Presiding Judge, and Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Reversed.

**HELLMAN, J.**

This is a consolidated appeal of three stalking protective orders (SPOs) entered pursuant to ORS 30.866. In six assignments of error, respondents challenge the sufficiency of the evidence to support each order and the award of attorney fees to petitioners. Because we conclude that the evidence was legally insufficient to support entry of the SPOs, we reverse.

In their first three assignments of error, we understand respondents to argue that the trial court erred because petitioners' evidence was insufficient to establish the elements of ORS 30.866. Although respondents request *de novo* review, we decline to exercise that discretion because this case is not "exceptional." *See* ORAP 5.40(8)(c). Thus,

> "[w]e review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error. Given respondent's challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome."

*H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021) (internal quotation marks and citation omitted).

To obtain SPOs under ORS 30.866(1), petitioners were required to establish by a preponderance of the evidence that,

> "(a)  The respondent intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner or a member of the petitioner's immediate family or household thereby alarming or coercing the petitioner;
>
> "(b)  It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and
>
> "(c)  The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the petitioner or a member of the petitioner's immediate family or household."

*Id.* "Contact" includes "[c]oming into the visual or physical presence of the other person" and "[f]ollowing the other

person." ORS 163.730(3). "Alarm" means "to cause appre-hension or fear resulting from the perception of danger" and repeated means "two or more times." ORS 163.730(1), (7).

We briefly recount the parties' history because that context is relevant to whether petitioners' alarm was reasonable. *See J. L. B. v. K. P. B.*, 250 Or App 122, 130, 279 P3d 290 (2012) ("[C]onduct that might appear benign when viewed in isolation can take on a different character when viewed either in combination with or against the back-drop of one party's aggressive behavior toward the other."). Petitioners, JH and MH, and respondents, DD and LD, are married couples who live on adjacent rural properties. The parties share some utilities and a driveway that provides access to the public road. Although the parties were once friends and previously shot firearms together, their relation-ship grew acrimonious. In November 2021, MH emailed LD and told respondents to stop contacting petitioners. Later that month, MH petitioned for SPOs against DD and LD and JH petitioned for an SPO against DD.

During the January 2022 contested hearing, peti-tioners testified that respondents' conduct made them fear for their safety and for their children's safety. For example, JH testified that respondents had turned off petitioners' water without notice and that he felt "menaced and intim-idated" after respondents dumped chicken remains near the shared property line. In addition, JH testified that, in November 2020, DD shot a firearm from respondents' porch into a "backdrop" on respondents' property. According to JH, DD made "menacing looks" and stared at him while shoot-ing. JH testified that DD's conduct made petitioners fear that stray shots would enter petitioners' property and strike the children as they played outside. The trial court granted all three permanent SPOs, and this appeal followed. We address each SPO in turn.

*MH's SPO against DD.* Respondents argue that the trial court erred when it entered MH's SPO against DD because the record establishes only one unwanted contact. We agree. Here, the record supports a determination that a qualifying contact occurred in November 2021 when DD followed MH for approximately 20 minutes on the highway,

drove beside her, and stared at her. MH also testified that the parties had an argument in April 2020 when DD yelled and made her "worry[] that he was going to fight" JH, that respondents owned several dogs that scared petitioners' children, and that MH heard DD praising one of the dogs after it had barked at them. However, when viewing the record in the light most favorable to the trial court's disposition, we conclude that the evidence is legally insufficient to support a second unwanted contact within the meaning of ORS 30.866(1). *See P. M. H. v. Landolt*, 267 Or App 753, 770-61, 341 P3d 175 (2014) ("The legislature has not authorized trial courts to issue SPOs for unwanted contact that is unsettling, unusual, or unpleasant."). Therefore, the trial court erred.

*MH's SPO against LD.* Respondents argue that the evidence was insufficient to support MH's SPO against LD. Viewing the evidence in the light most favorable to the trial court's disposition, we conclude that the trial court erred. Here, MH testified that after she emailed LD to tell respondents not to contact petitioners, LD repeatedly responded to MH's email.[1] MH also testified about respondents' dogs and that, during the April 2020 argument, LD advanced toward her and made her "back up." However, we observe that LD testified that respondents kept the dogs behind a fence, and MH acknowledged that LD "didn't get right in [MH's] face" during the argument and that LD had never physically harmed her. Therefore, even though LD's conduct may have been "annoying and harassing," it "did not give rise to an objectively reasonable apprehension or fear of physical injury." *S. A. B. v. Roach*, 249 Or App 579, 587, 277 P3d 628 (2012); *see also J. L. B.*, 250 Or App at 130-31 (concluding that the petitioner's apprehension was not objectively reasonable and reversing the entry of the SPO because "the parties' past relationship was not so characterized by violence or abuse as to make the more recent contacts objectively threatening").

*JH's SPO against DD.* Respondents contend that the evidence is insufficient to support JH's SPO against DD. We understand that the trial court relied, in part, on JH's testimony about respondents' dogs and an image of a penis that

---

[1] We understand that the trial court did not rely on LD's emails to MH as qualifying contacts.

DD had spray painted on the shared driveway. Considering that evidence in the context of the parties' relationship—including JH's testimony that DD drew the image on top of a message that JH had spray painted—we conclude that a reasonable person in JH's situation would not have been alarmed by DD's conduct. *See S. A. B.*, 249 Or App at 587 ("The victim's situation includes all of the circumstances of the parties' relationship.").

Similarly, we conclude that DD's conduct on two other occasions that the trial court considered would not have alarmed a reasonable person in JH's situation. On one occasion, DD stood in front of JH's car in the shared driveway and called JH a "coward" and a homophobic slur. Because JH believed that DD was "was trying to intentionally cause" him physical harm, JH quickly left. On the other occasion, DD stood on respondents' property and yelled at JH while "swinging around" and "acting all aggressive." Although we observe that DD's conduct "fell somewhere short of common decency," we conclude that the evidence was legally insufficient to establish that a reasonable person in JH's situation would have felt apprehension for his own or his family's safety in those situations.[2] *See W. M. v. Muck*, 267 Or App 368, 373, 340 P3d 737 (2014) ("No doubt, respondent's behavior fell somewhere short of common decency, but the SPO statute sets a higher bar than that."). Therefore, the trial court erred.

In their fourth through sixth assignments of error, respondents challenge the award of attorney fees and costs to petitioners. Because the trial court erred when it entered the SPOs, "[i]t follows that the award of attorney fees must also be reversed." *Goodness v. Beckham*, 224 Or App 565, 579, 198 P3d 980 (2008).

Reversed.

---

[2] To the extent that the trial court relied on the image or DD's verbal statements as the cause of JH's alarm, that expressive conduct is insufficient to support the SPO. *See State v. Hejazi*, 323 Or App 752, 761, 524 P3d 534 (2023) ("If the nonexpressive conduct causes the alarm, then *Rangel* does not apply; however, if the expressive conduct causes the alarm, then it must meet the *Rangel* standard of a qualifying threat."); *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) (explaining that a threat "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts").